IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROCIO GALVAN AND JOSEPH HAWTHORNE, individually and on behalf of the class defined below, | ) ) ) ) | |
| Plaintiffs | ) ) | Case No. |
| v. | ) ) | |
| NCO FINANCIAL SYSTEMS, INC., and | ) | JURY DEMAND |
| Defendant | ) ) | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. Plaintiffs Rocio Galvan ("Galvan") and Joseph Hawthorne ("Hawthorne") (together referred to as "Plaintiffs") file this action individually and on behalf of the class defined below against NCO Financial Systems, Inc. ("NCO Financial") for violations of the Illinois Collection Agency Act, 225 ILCS 425 et seq., ("ICAA")(Count One) and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq., ("FDCPA") (Count Two), arising from its collection of debts that were purchased by NCO Portfolio Management, Inc. ("NCO Portfolio") when NCO Portfolio was not a licensed debt collector in Illinois.

### JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. §1331, the Court has federal question jurisdiction over the claims brought pursuant to the FDCPA.

3. Pursuant to 28 U.S.C §1367(a), the Court has supplemental jurisdiction over the claims brought pursuant to the ICAA.

4. Pursuant to 28 U.S.C. §1391(a)(2), venue is proper in this district because a substantial portion of the events giving rise to this action occurred in this district.

**PARTIES AND OTHER RELEVANT PERSONS**

5. Plaintiffs are natural persons who resided in Cook County Illinois at all times relevant to this action.

6. NCO Financial is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania.

7. NCO Financial is one of the largest collection agencies in the world.

8. NCO Financial regularly does business in Illinois and has a registered agent, CT Corporation System, located in Chicago, Illinois.

9. NCO Financial is engaged in the business of collecting consumer debts allegedly owed to others and regularly uses the telephone and United States mail for that purpose.

10. NCO Financial is a "debt collector" as defined by the FDCPA.

11. NCO Financial is a "collection agency" as defined by the ICAA.

12. NCO Portfolio is a Delaware corporation with its principal place of business in Horsham, Pennsylvania.

13. NCO Portfolio is one of the ten largest debt purchasers in the United States.

14. NCO Portfolio regularly does business in Illinois and has a registered agent, CT Corporation System, located in Chicago, Illinois.

15. NCO Portfolio is engaged in the business of purchasing or claiming to purchase charged-off consumer debts and enforcing the debts against the consumers by filing collection lawsuits and otherwise.

16. NCO Portfolio is a "collection agency" as defined by the ICAA.

17. NCO Portfolio has never been licensed as a collection agency in the State of Illinois.

**THE ICAA**

18. In order to protect Illinois consumers, the ICAA creates a licensing

regime and makes it a crime for collection agencies to operate, directly or indirectly engage in the business of collecting, or exercise the right to collect in Illinois without first obtaining a license. 225 ILCS 425/4; 225 ILCS 425/14.

19. The ICAA defines a "collection agency" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." 225 ILCS 425/2.

20. The ICAA further provides that a corporation acts as a collection agency when it "buys accounts, bills, or other indebtedness and engages in collecting the same." 225 ILCS 425/3.

21. The ICAA prohibits a collection agency, whether licensed or not, from attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. 225 ILCS 425/9(a)(20).

22. Similarly, the ICAA also prohibits a collection agency, whether licensed or not, from misrepresenting the amount owed (225 ILCS 425/9(a)(26)) and from collecting or attempting to collect any amount not authorized by law. 225 ILCS 425/9(a)(29).

23. There is a private right of action for damages arising from violations of the ICAA.

### Factual Background

24. On information and belief, throughout the time period relevant to this action NCO Portfolio purchased thousands of accounts receivable ("Debts") allegedly owed by Illinois consumers from some of the nations largest financial institutions, such as Citibank and Bank of America, and from other creditors.

25. Because NCO Portfolio was never licensed as a collection agency in Illinois, its

purchases of the Debts were illegal and it obtained no rights to any payment thereby. *See LVNV Funding v. Trice*, 1-09-2773, 2011 Ill. App. LEXIS 228 (1st Dist. March 16, 2011).

26. Even though NCO Portfolio's purchases of the Debts were illegal and it obtained no rights to payment of the Debts, it retained NCO Financial to collect the Debts on its behalf.

27. At all times relevant to this action, NCO Financial regularly used telephones and and the United States mail to contact thousands of consumers throughout Illinois who allegedly owed the Debts purchased by NCO Portfolio.

28. Throughout the time period relevant to this action, NCO Financial has falsely represented to thousands of Illinois consumers that they owed the Debts to NCO Portfolio when in fact NCO Portfolio had no right to purchase the Debts or collect payment for the same.

29. Throughout the time period relevant to this action, NCO Financial has collected thousands if not millions of dollars from Illinois consumers whom it alleged owed the Debts to NCO Portfolio.

### FACTS RELATING TO PLAINTIFFS

30. In mid to late 2006, NCO Financial demanded payment from Hawthorne of a debt that NCO Portfolio had purchased from Citibank, which Hawthorne allegedly owed in connection with his use of a personal credit card.

31. In mid to late 2006, Hawthorne made payments to NCO Financial, who received payment on behalf of NCO Portfolio, and eventually satisfied the alleged debt.

32. On March 5, 2008, NCO Portfolio filed a lawsuit against Hawthorne in the Circuit Court of Cook County Illinois to collect the same debt, even though it had already been satisfied.

33. After being served with process in the collection lawsuit, Hawthorne

filed an appearance in the case, incurring a fee of $168.00.

34. NCO Portfolio dismissed the case against Hawthorne, but NCO Financial, on behalf of NCO Portfolio, has since demanded further payment of the debt from Hawthorne as recently as May 2011.

35. On March 5, 2008, NCO Portfolio filed a lawsuit against Galvan in the Circuit Court of Cook County Illinois to collect a debt that it had purchased from AT&T Universal, which Galvan allegedly owed in connection with her use of a personal credit card.

36. Throughout 2008, NCO Financial demanded payment from Galvan with respect to the debt allegedly owed to NCO Portfolio.

37. To resolve the dispute, Galvan made monthly payments to NCO Financial, who received payment on behalf of NCO Portfolio, between May 2008 and November 2008.

38. NCO Financial took all of the above collection actions on behalf of NCO Portfolio, which had purchased the alleged debts in question at a time when it was not licensed as a collection agency in Illinois.

### CLASS ALLEGATIONS

39. Plaintiffs bring this action on behalf of the following class and sub-class.

40. The ICAA class consists of (a) all natural persons residing in Illinois (b) from whom NCO Financial demanded payment of a debt (c) allegedly owed to NCO Portfolio (d) between June 8, 2006 and 20 days after the filing of this complaint.

41. An FDCPA sub-class consists of (a) all natural persons residing in Illinois (b) from whom NCO Financial demanded payment of a debt (c) allegedly owed to NCO Portfolio (d) between June 8, 2010 and 20 days after the filing of this complaint.

42. Plaintiffs and all members of the class and sub-class have been harmed by NCO Financial.

43. Both the class and sub-class are so numerous that joinder of all members is not practicable. There are likely thousands of members of each class and sub-class based on NCO Financial's size and a search of electronic court records indicating that NCO Portfolio filed over 1,000 consumer debt collection lawsuits between 2007 and 2008 in the Circuit Court of Cook County alone. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

44. Both the class and sub-class can be identified easily through records maintained by NCO Financial.

45. There are questions of law and fact common to the class members in both the class and sub-class, which predominate over any questions relating to individual class members. Some of the predominant common questions include:

    a. Whether NCO Financial is a "collection agency" as defined by the ICAA;

    b. Whether NCO Financial is a "debt collector" as defined by the FDCPA;

    c. Whether NCO Portfolio is a "collection agency" as defined by the ICAA;

    d. Whether NCO Portfolio was entitled to any payment from Illinois consumers for the debts it had purchased when it was not licensed in Illinois;

    e. Whether NCO Financial violated the ICAA by demanding payment of those debts;

   f. Whether NCO violated the FDCPA by demanding payment of those debts; and

   g. The appropriate relief.

46. Plaintiffs will fairly and adequately represent the class members of the class and sub-class. Plaintiffs have retained counsel experienced in class actions and collection abuse litigation. Plaintiffs' claims are typical of the claims of the class members because they are all based on the same factual and legal theories. Plaintiffs have no interests adverse to any member of the class or sub-class.

47. A class action is appropriate for the fair and efficient adjudication of this matter. Class wide relief is essential to compel NCO Financial to comply with the FDCPA. Members of the class and sub-class are likely unaware of their rights and, even if they are, the interest in individually controlling the prosecution of separate claims is small because of the limited damages available. There are likely more than 1,000 possible individual actions for both the class and sub-class, many of which are not economically feasible on their own.

### COUNT ONE - VIOLATIONS OF THE ICAA (ENTIRE CLASS)

48. Plaintiffs incorporate each of the preceding paragraphs as if specifically alleged herein.

49. In order to protect consumers, the ICAA creates a licensing regime and makes it a crime for collection agencies to operate, directly or indirectly engage in the business of collecting, or exercise the right to collect in Illinois without first obtaining a license. 225 ILCS 425/4; 225 ILCS 425/14.

50. Although NCO Financial was licensed to collect debts in Illinois at all times relevant to this action, NCO Portfolio has never been licensed to collect debts in Illinois.

51. Because NCO Portfolio was never licensed to collect debts in Illinois, its

purchases of the debts owed by Illinois consumers were illegal and it obtained no rights to any payment thereby.

52. The ICAA prohibits a collection agency, whether licensed or not, from attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. 225 ILCS 425/9(a)(20).

53. Similarly, the ICAA prohibits a collection agency, whether licensed or not, from misrepresenting the amount owed (225 ILCS 425/9(a)(26)) and from collecting or attempting to collect any amount not authorized by law (225 ILCS 425/9(a)(29)).

54. For every instance in which NCO Financial demanded payment from an Illinois consumer for a debt allegedly owed to NCO Portfolio, whether by written correspondence or by telephone or otherwise, NCO Financial attempted to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist in violation of 225 ILCS 425/9(a)(20) because NCO Portfolio has never been permitted to purchase or receive payment for any consumer debts in Illinois.

55. For every instance in which NCO Financial demanded payment from an Illinois consumer for a debt allegedly owed to NCO Portfolio, whether by written correspondence or by telephone or otherwise, NCO Financial misrepresented the amount owed in violation of 225 ILCS 425/9(a)(26) because NCO Portfolio has never been permitted to purchase or receive payment for any consumer debts in Illinois.

56. For every instance in which NCO Financial demanded payment from an Illinois consumer for a debt allegedly owed to NCO Portfolio, whether by written correspondence or by telephone or otherwise, NCO Financial attempted to collect an amount unauthorized by law in violation of 225 ILCS 425/9(a)(29) because NCO Portfolio has never been permitted to purchase or receive payment for any consumer debts in Illinois.

57. With respect to Galvan, NCO Financial attempted to enforce a remedy it had reason to know did not exist, misrepresented the amount owed, and attempted to collect an amount unauthorized by law in violation of the ICAA each time it demanded payment of the debt that NCO Portfolio had purchased from AT&T Universal.

58. With respect to Hawthorne, NCO Financial attempted to enforce a remedy it had reason to know did not exist, misrepresented the amount owed, and attempted to collect an amount unauthorized by law in violation of the ICAA each time it demanded payment of the debt that NCO Portfolio had purchased from Citibank.

59. WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the class and against NCO Financial for:

    a. Reimbursement to each member of any amounts paid to NCO Financial for a debt allegedly owed to NCO Portfolio as actual damages pursuant to 15 U.S.C. §1692k.

    b. Punitive damages.

    c. Costs and reasonable attorney's fees.

### COUNT TWO - VIOLATIONS OF THE FDCPA (SUB-CLASS ONLY)

60. Hawthorne incorporates paragraphs 1-47 as if specifically alleged herein.

61. The FDCPA was enacted to eliminate abusive debt collection practices and to ensure that debt collectors who refrained from abusive practices were not at a competitive disadvantage.

62. To that end, the FDCPA prohibits, among other things, the false representation of the character, amount, or legal status of any debt (15 U.S.C. §1692e(2)(A)) and the collection of any amount that is not permitted by law (15 U.S.C §1692f(1)).

63. For every instance in which NCO Financial demanded payment from an Illinois

consumer for a debt allegedly owed to NCO Portfolio, whether by written correspondence or by telephone or otherwise, NCO Financial falsely represented the legal status of the debt in violation of 15 U.S.C. §1692e(2)(A) because NCO Portfolio has never been permitted to purchase or receive payment for any consumer debts in Illinois.

64. For every instance in which NCO Financial demanded payment from an Illinois consumer for a debt allegedly owed to NCO Portfolio, NCO Financial collected an amount that was not permitted by law in violation of 15 U.S.C. §1692f(1) because NCO Portfolio has never been permitted to purchase or receive payment for any consumer debt in Illinois.

65. With respect to Hawthorne, NCO Financial falsely represented the legal status of a debt and collected an amount not permitted by law in violation of the FDCPA each time it demanded payment of the debt that NCO Portfolio had purchased from Citibank.

66. WHEREFORE, Hawthorne requests that the Court enter judgment in his favor and in favor of the sub-class and against NCO Financial for:

    a. Reimbursement to each member of all amounts paid to NCO Financial for a debt allegedly owed to NCO Portfolio as actual damages pursuant to 15 U.S.C. §1692k.

    b. Statutory Damages in the amount of $500,000 pursuant to 15 U.S.C. §1692k.

    c. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k.

Respectfully Submitted,
Plaintiffs Rocio Galvan and Joseph Hawthorne

By: /s/ Timothy J. Sostrin
One of their Attorneys

Keith J. Keogh
Craig Shapiro
Timothy J. Sostrin
Keogh Law, Ltd.
101 N. Wacker Drive, Suite 605
Chicago, IL 60606
312-726-1092 (Office)
312-726-1093 (Fax)
TSostrin@Keoghlaw.com