IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of a class, <br><br> Plaintiffs, <br> vs. <br><br> NCO FINANCIAL SYSTEMS, INC., <br><br> Defendant. | Case No. 11 C 3918 |
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of a class, and PEOPLE OF THE STATE OF ILLINOIS ex rel. ROCIO GALVAN and JOSEPH HAWTHORNE, <br><br> Plaintiffs, <br> vs. <br><br> NCO PORTFOLIO MANAGEMENT, INC., <br><br> Defendant. | Case No. 11 C 4651 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Rocio Galvan and Joseph Hawthorne have sued NCO Portfolio Management, Inc. (NCO Portfolio) and have, in a separate suit, sued NCO Financial Systems, Inc. (NCO Financial), both under the Illinois Collection Agency Act (ICAA). *See* 225 ILCS 425/4 & 14. In the latter suit, Hawthorne also asserts a claim against NCO Financial under the Fair Debt Collection Practices Act (FDCPA). *See* 15 U.S.C. § 1692f(1). The

suit against NCO Financial is Case No. 11 C 3918. The suit against NCO Portfolio is Case No. 11 C 4651.

In Case No. 11 C 4651, plaintiffs allege that NCO Portfolio was not a licensed debt collector and violated the ICAA by purchasing debts from financial institutions and collecting the debts. NCO Portfolio contracted with NCO Financial to collect some of these debts.

In Case No. 11 C 3918, plaintiffs allege that NCO Financial violated the ICAA and the FDCPA by collecting the debts on behalf of NCO Portfolio. Specifically, plaintiffs allege that because NCO Portfolio was not licensed, it could not legally purchase the debts and thus acquired no rights to payment. According to plaintiffs, NCO Financial violated the ICAA and the FDCPA by collecting on NCO Portfolio's behalf amounts to which NCO Portfolio was not entitled.

Plaintiffs have moved in each case to certify a class of similarly situated plaintiffs. They have since withdrawn the request to certify an FDCPA class in Case No. 11 C 3918. For the reasons stated below, the Court grants plaintiffs' motions for class certification with regard to the proposed ICAA classes in both cases.

**Facts**

The Court takes the following facts from the complaints filed in these cases.

NCO Portfolio is a Delaware corporation operating in Illinois. It purchases debts owed by individuals, including individuals residing in Illinois. NCO Portfolio sued to collect some of these individuals' debts and contracted with NCO Financial to collect some of the debts.

Galvan owed a debt to AT&T Universal in connection with her use of a personal

2

credit card. NCO Portfolio purchased the debt from AT&T Universal and contracted with NCO Financial to collect the debt from Galvan. NCO Financial attempted to collect from Galvan and successfully collected funds in 2008.

Hawthorne owed a debt to Citibank in connection with his use of a personal credit card. NCO Portfolio purchased that debt from Citibank and contracted with NCO Financial to collect the debt from Hawthorne. NCO Financial attempted to collect from Hawthorne and successfully collected funds in 2006.

Hawthorne says that he paid NCO Portfolio in full. Despite this, he says, NCO Portfolio sued him, alleging that the debt was not fully paid. NCO Portfolio later dismissed the case. Hawthorne says that NCO Financial attempted further collection from him as recently as 2011.

## Legal Background

The ICAA was amended effective January 1, 2008 in a way that arguably broadened the scope of regulated collection agencies in Illinois. Before the amendment, the statute provided that any person or entity that, for compensation, offered to collect debts was a collection agency that had to be licensed. There were conflicting court decisions concerning whether a debt buyer was considered to be a collection agency under the ICAA. The 2008 amendment changed the statute's definition of collection agencies to expressly include any person or entity that engages in debt collection for itself or for others. 225 ILCS 425/2.

In *LVNV Funding, LLC v. Trice*, ___ Ill. App. 3d ___, 952 N.E.2d 1232 (2011), the Illinois Appellate Court ruled that an unlicensed debt buyer violates the ICAA by purchasing a debt and then attempting to collect it. *Id.*, 952 N.E.2d at 1237. Plaintiffs

allege in Case No. 11 C 4651 that NCO Portfolio violated the ICAA both before and after the 2008 amendment by collecting or attempting to collect debts it had purchased, either directly or through other entities like NCO Financial. Plaintiffs allege in Case No. 11 C 3918 that NCO Financial violated the ICAA before and after the 2008 amendment by collecting and attempting to collect, for NCO Portfolio, debts that NCO Portfolio had purchased but on which NCO Portfolio could not legally collect because it was unlicensed.

## Discussion

In Case No. 11 C 4651, plaintiffs ask the Court to certify a Rule 23(b)(3) class against NCO Portfolio consisting of all natural persons residing in Illinois from whom NCO Portfolio collected a debt between June 8, 2006 and June 28, 2011 who did not release their claims as part of the class settlement in *Caston-Palmer v. NCO Portfolio*, Case No. 08 C 2818. In Case No. 11 C 3918, plaintiffs ask the Court to certify a Rule 23(b)(3) class against NCO Financial consisting of all natural persons residing in Illinois from whom NCO Financial demanded and collected payment of a debt allegedly owed to NCO Portfolio between June 8, 2006 and June 28, 2011 who did not release their claims as part of the settlement in *Caston-Palmer v. NCO Portfolio*.

As noted earlier, plaintiffs originally asked the Court to certify a similar Rule 23(b)(3) sub-class pertaining to NCO Financial's alleged violations of the FDCPA, but they have since withdrawn that request. *See* Pls.' NCOF Reply at 2 n.2. This renders moot several of the arguments that NCO Financial made in opposition to class certification.

4

In Case No. 11 C 4651, NCO Portfolio makes the following arguments in opposition to plaintiffs' motion:

- There are no class members because NCO Portfolio does not itself engage in collection activity.

- As a debt buyer, NCO Portfolio was not required to be licensed before the ICAA was amended in 2008, so it cannot be liable for collection of debts purchased before the amendment. A class that includes pre-2008 amendment plaintiffs is thus over-inclusive. In addition, because NCO Portfolio purchased both Galvan's and Hawthorne's debts before the amendment, they are inadequate class representatives and their claims are not typical of those of the entire class. Moreover, a class that includes members with claims arising before the 2008 amendment as well as members with claims arising after the amendment is inappropriate because their claims are based on divergent legal theories.

- Some potential class members were sued to collect their debts, whereas others were the subject of collection activity short of being sued. Class certification is inappropriate because of the differences in relief available to these different groups. In addition, NCO Portfolio argues that because both named plaintiffs were sued, they cannot adequately represent class members who were not sued.

- Proof of damages is likely to be an individualized issue not susceptible to common proof.

- Common issues do not predominate, because some class members may

have signed arbitration agreements and/or class action waivers and because some may have no actual damages.

- A class action is not a superior means of resolving the case, because if plaintiffs obtain disgorgement of amounts paid to NCO Portfolio, some of them may still owe it to the creditor, and those plaintiffs will obtain no benefit from this suit.

NCO Financial adopts NCO Portfolio's arguments as its own. Several of the additional arguments that NCO Financial makes in Case No. 11 C 3918 focus on the FDCPA claim. Because plaintiffs have now foresworn class certification on that claim, these arguments are moot. The only separate argument that NCO Financial makes regarding the proposed ICAA class is that plaintiffs' claims against NCO Financial lack merit because that entity cannot be held vicariously liable for NCO Financial's failure to obtain a license.

Because of the overlap in the arguments made in the two cases, the Court will address both cases together.

**1.    Standard**

The Court may certify a case as a class action if the party seeking certification demonstrates that it has met all the requirements of Rule 23(a) and the requirements of one of the subparts of Rule 23(b). Under Rule 23(a), the party must show that the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the proposed class; the class representatives' claims are typical of the claims of the class; and the representatives will fairly and adequately represent the interests of the class. See Fed. R. Civ. P. 23(a)(1)-(4); *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 613 (1997). In this case, plaintiffs seek certification under Rule 23(b)(3). This means that they must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see Amchem Prods.*, 521 U.S. at 615.

Plaintiffs bear the burden of demonstrating that certification is appropriate. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). The Court need not rely solely on the allegations in plaintiffs' complaint in assessing whether to certify a class, but instead "should make whatever factual and legal inquiries are required under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001).

**2.     Preliminary issues**

NCO Financial asserts that the proposed class in Case No. 11 C 3918 cannot be certified because plaintiffs' claim against it lacks merit. *See* NCOF Resp. at 2 n.1. Specifically, NCO Financial claims that it cannot be vicariously liable for NCO Portfolio's failure to obtain a debt collection license in Illinois. Assuming this is so, it would not be a basis to deny class certification. A court may certify a class even if the plaintiffs' claim might ultimately fail on the merits. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). If NCO Financial contends that plaintiffs' claims are legally or factually deficient, it should have moved to dismiss or for summary judgment. The Court will examine the merits only to the extent that they overlap with the issues it must address under Rule 23. *See Szabo*, 249 F.3d at 675-77.

In any event, NCO Financial misunderstands plaintiffs' claim. Plaintiffs do not contend that NCO Financial is vicariously liable for the actions of NCO Portfolio. Rather, they contend that NCO Financial itself violated the ICAA by collecting on debts purchased by NCO Portfolio, because NCO Portfolio could not legally receive payments on those debts. See Pls.' NCOF Reply at 3-4.

In Case No. 11 C 4651, NCO Portfolio argues that when it purchased Galvan and Hawthorne's debts – before 2008 – it did not violate the ICAA as it existed at the time. The Court need not answer this question definitively in order to certify the class: again, the fact that plaintiffs ultimately might lose on the merits has no direct bearing on the Rule 23 inquiry. See Schleicher, 618 F.3d at 685. The Court therefore rejects NCO Portfolio's argument that the proposed class includes members that have no viable claim. That said, the Court notes that plaintiffs' claims are based not on NCO Portfolio's purchase of the debts, but rather on its collection activity, at least some of which is claimed to have taken place after the ICAA was amended.

NCO Portfolio makes two other related arguments that are, at least facially, more pertinent to the Rule 23 inquiry. First, NCO Portfolio argues that because Galvan and Hawthorne do not have viable claims, a class cannot be certified because it would be without a named plaintiff. This, again, stems from NCO Portfolio's contention that because it purchased the named plaintiffs' debts before the 2008 ICAA amendments, it was not required to be licensed. As the Court has noted, however, plaintiffs' claim does not attack NCO Portfolio's purchase of debts. Rather, plaintiffs focus on NCO Portfolio's attempts to collect debts, on its own or through another entity. Second, NCO Portfolio argues that Galvan and Hawthorne's claims of illegality predate the 2008 ICAA

amendments and thus they are not appropriate class representatives. The Court will address this point in greater detail below. The Court notes, however, that Hawthorne contends that he was subject to collection activity in 2011, after the 2008 ICAA amendments.

**3.     Numerosity**

Rule 23(a) requires the proposed class to be sufficiently numerous to make joinder of the parties impracticable. Plaintiffs have made the necessary showing as to both proposed classes.

NCO Financial has conceded this issue. *See* Nov. 30, 2011 Tr. at 3-5. The Court concludes that the class in Case No. 11 C 3918 satisfies the Rule 23(a) numerosity requirement.

NCO Portfolio argues that the proposed class in Case No. 11 C 4651 has no members. It maintains that it "[does] not engage in active debt collection" but merely purchases debts and used third parties to collect those debts. *See* NCOP Resp. at 2. As the Court has indicated, however, plaintiffs do not seek certification of a class of those whose debts NCO Portfolio purchased. Rather, they have asked for certification of a class consisting of persons from whom NCO Portfolio collected a debt. Plaintiffs' claim, at least in part, is that NCO Portfolio collected debts within the meaning of the ICAA by using agents to do so on its behalf. This may or may not turn out to be a viable contention, but that is not the issue for purposes of the numerosity inquiry under Rule 23. Given plaintiffs' theory of liability as to NCO Portfolio, there is no question that the class is sufficiently numerous that joinder is impracticable.

### 4. Commonality

Rule 23(a)(2) requires the plaintiff to show that there are questions of fact or law common to the proposed class. This incorporates a requirement that the alleged common questions will generate answers sufficient to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 131 S. Ct. at 2551.

With regard to NCO Portfolio, plaintiffs have identified several key questions of fact and law that meet this requirement. Among these questions are: whether NCO Portfolio is a collection agency as defined by the ICAA; whether, because it was not licensed, it was entitled to payment from Illinois consumers for the debts it had purchased; and whether it violated the ICAA by collecting and attempting to collect on those debts, either directly or through others. *See* Pls.' NCOP Br. at 5-7. Each of these questions is central to the validity of plaintiffs' claim against NCO Financial, and each can be resolved with common proof and argument.

With regard to plaintiffs' claims against NCO Financial, certain of the same questions will require an answer and can be answered in common: whether NCO Portfolio is a collection agency as defined by the ICAA, and whether, because it was not licensed, it was entitled to payment from Illinois consumers for the debts it had purchased. Plaintiffs' claim against NCO Financial is that it violated the ICAA by demanding payment of debts purchased by NCO Portfolio. *See* Pls.' NCOF Br. at 8-9. Again, these questions can be answered with common proof and argument, and they are critical to plaintiffs' claims against NCO Financial.

The Supreme Court determined in *Wal-Mart Stores* that certification of the proposed class in that case would not generate answers sufficient to determine whether each member of the proposed class had faced discrimination. This was due in significant part to the decentralized and compartmentalized decision-making that Wal-Mart employed. *See Wal-Mart Stores*, 131 S. Ct. at 2554-57. In this case, unlike in *Wal-Mart*, each of the claims appears to involve centralized decision-making. Specifically, NCO Portfolio, which was unlicensed, purchased debts and obtained payments on those debts through NCO Financial or by filing its own suits to collect on the debts. The crux of the case involves a determination of whether this was legal or illegal under the ICAA. This is the epitome of a common question, the answer to which will enable determination of the case. And this is so even if the answer ends up being different for the pre-2008 and post-2008 periods.

In sum, the Court finds that each proposed class presents common questions of fact and law sufficient to satisfy Rule 23(a)(2).

5.  **Typicality**

Under Rule 23(a)(3), a plaintiff's claim is typical if it "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [his] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

A named plaintiff satisfies the typicality requirement when his claim and those of the class members have a common legal theory, even if there are some factual

variations. *Id.* at 514. To put it another way, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

NCO Portfolio argues that Galvan and Hawthorne's claims are not typical of the class because their debts were purchased before the ICAA was amended in 2008. It argues that this puts Galvan and Hawthorne in a legal position different from those class members whose debts NCO Portfolio purchased after the ICAA was amended. *See id.* Again, this argument is based on a misunderstanding of plaintiffs' theory of liability. Their claim is that NCO Portfolio violated the ICAA each time it collected on a debt, whether by bringing suit or collecting through a third party such as NCO Financial. Thus the dates when NCO Portfolio purchased the debts does not appear to be a particularly significant issue.

NCO Portfolio also argues that the claims of class members who were the subject of collection activity before the 2008 ICAA amendments differ significantly from the claims of those who were the subject of collection activity after the 2008 amendments. Plaintiff Hawthorne contends, however, that he was subjected to collection activity both before and after the 2008 amendments. He therefore unquestionably has claims that are typical of those of all potential class members.

Even though Galvan's claims are based only on pre-2008 amendment collection activity, his claims are based on the same legal theory as the claims of both pre-amendment class members and post-amendment class members – namely, that it was illegal for NCO Portfolio to collect debts itself or through others unless it was licensed,

12

and it was illegal for NCO Financial to collect debts for an unlicensed entity like NCO Portfolio. The answer may end up differing depending on whether the activity occurred before or after the 2008 ICAA amendments, but that does not undercut the fact that Galvan's claims are based on the same legal theory as those of the entire class.

**6.     Adequacy of representation**

The Rule 23(a)(4) requirement that the class representative will fairly and adequately protect the interests of the class involves two inquiries: the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and the plaintiffs must not have interests antagonistic to those of the class. *Rosario*, 963 F.2d at 1018. This requirement is intended to "uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625.

Defendants do not contest that plaintiffs' chosen counsel are qualified to pursue this action. Given the extent of counsel's experience in litigating class action cases in this District, the Court has no reason to question their ability to fairly and adequately litigate the case on behalf of the class.

NCO Portfolio argues that Galvan and Hawthorne cannot represent the proposed class fairly and adequately because they have claims that are different from those of a portion of the proposed class, specifically, those with claims arising after the ICAA was amended in 2008. *See* NCOP Br. at 3. It is unclear to what extent the pre- and post-ICAA amendments issue will consume time and energy during the litigation– its resolution is largely a legal issue, not a factual issue requiring discovery. If this turns

out to be a significant focus, it may become appropriate to divide the class into subclasses for those with pre-2008 amendment claims and those with post-2008 amendment claims. See Fed. R. Civ. P. 23(c)(5). But even if this ends up happening, the current representatives will be adequate class representatives of one or both subclasses. Galvan was the subject of collection activity only before the 2008 ICAA amendments, but Hawthorne contends that he was subject to collection activity both before and after the 2008 amendments. Thus the current named plaintiffs are, when considered together, in a position to pursue the same arguments as all of the other members of the proposed class and to do so fairly and adequately. In particular, as matters currently stand, Hawthorne would able to represent adequately both class members who have exclusively post-2008 claims and those who, like him, have claims for both the pre-2008 and post-2008 periods. If, as the case develops, it turns out otherwise, it may become appropriate to identify an additional representative. But this hypothetical prospect does not undermine the adequacy of the proposed class representatives as matters stand now.

**7.     Predominance and superiority**

Rule 23(b)(3) requires the Court to find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Generally, when a lawsuit involves a challenge to a common policy or practice, the validity of the policy or practice tends to be the predominant issue. *See General Telephone Co. of*

*Southwest v. Falcon*, 457 U.S. 147, 159 n.15 (1982); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012) ("The ability to use [ ] common evidence and common methodology to prove a class's claim is sufficient to support a finding of predominance . . . .").

Plaintiffs contend that NCO Portfolio had a common policy of purchasing debts and then using third parties to collect those debts on its behalf when it was not licensed as a debt collector, in violation of the ICAA. *See* Pls.' NCOP Br. at 2-3. Plaintiffs contend that the questions they raise are central to determining liability for all members of the class and predominate over questions unique to certain class members. *See id*.

NCO Portfolio argues that class certification is inappropriate because individuals who were subject to collection activity before the ICAA was amended stand in a different legal position than those who were subject to collection activity after the ICAA was amended in 2008. This argument hinges on whether the pre-amendment ICAA required NCO Portfolio to be licensed in Illinois. Though there is no question that this is a legal issue that the Court will have to determine, it involves a binary choice – either the pre-amendment ICAA applied to debt buyers like NCO Portfolio, or it didn't. And the issue is one that would, at most, divide the class into two subgroups (each of which, as the Court has indicated, would have an adequate representative even considering only the two currently named plaintiffs). In short, this is a common issue, not an individual one. Contrary to NCO Portfolio's argument, focus on this issue supports the contention that common issues predominate over individual issues.

NCO Portfolio further argues that common issues do not predominate because NCO sued some members of the class but others were merely subject to "more

traditional debt collection efforts." *See* NCOP Br. at 3. This question focuses on whether the nature of relief available is a common or individualized inquiry. *See id.* Plaintiffs have limited the proposed class to those individuals who suffered monetary damages, as opposed to emotional distress. *See* Pls.' NCOP Reply at 9. From what the Court can determine, any damages to be awarded would consist of the amount each class member paid, plus any court-related fees paid by class members who were sued. *See id.* at 9 & n.10. These are determinations that likely can be made based on business records (of the defendants) or public records (of the courts in question), and the proof on these points likely will be based on common or affidavit-based foundational testimony, *see* Fed. R. Evid. 902(11), combined with presentation of summaries compiling the damages-relevant information from those records, *see* Fed. R. Evid. 1006. This is not the sort of individualized inquiry that will make common issues less than predominant or that would render a class action a less-than-superior means of resolving the parties' dispute. And even if the Court's assumptions in this regard are not borne out, that does not prevent class determination of liability-related issues. *See* Fed. R. Civ. P. 23(c)(4); *Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008); *Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

NCO Portfolio also argues that there may be some members of the class who signed arbitration clauses or class action waivers. *See* NCOP Br. at 14. It has not, however, provided any evidence to support the proposition that this is an actual defense at all, let alone with regard to any significant proportion of class members. Absent such evidence, NCO Portfolio's contention is entirely hypothetical and thus does not bear on

the question of predominance.

Finally, NCO Portfolio contends that if plaintiffs prevail and obtain disgorgement of the amounts they paid to NCO Portfolio, some of them may still owe it to the original creditor, and those plaintiffs will obtain no benefit from the suit. Plaintiffs counter that most of the underlying debts likely are so old that they cannot be collected at this point due to the applicable statutes of limitation. *See* Pls.' NCOP Reply at 12-13.

The Court has a hard time seeing how this defeats the superiority of a class action as the means of resolving the claims of the class members. First, there is a very good chance that plaintiffs are right on their argument about staleness, and if so, the possibility of debt resurrection likely would apply only to a very small number of class members. Second, the proposition that particular class members might face further collection efforts if the class prevails can be disclosed prominently in any notice that is sent to members of the class, so that those concerned about potential collection activity may opt out if they wish. In any event, the possibility of future litigation by non-parties (creditors or other debt collectors) against some class members has nothing to do with the superiority of a class action for resolving the parties' current dispute.

The current dispute is one that involves a very large number of potential class members; unitary decision-making on the defense side; common issues critical to liability that will predominate over any individual issues; and small dollar amounts at stake for any particular plaintiff. Plaintiffs have established that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."

**Conclusion**

For the reasons stated above, the Court grants both motions for class certification. In Case No. 11 C 4651, against NCO Portfolio, the Court certifies a class consisting of all natural persons residing in Illinois from whom NCO Portfolio collected a debt between June 8, 2006 and June 28, 2011 who did not release their claims as part of the settlement in *Caston-Palmer v. NCO Portfolio*. In Case No. 11 C 3918, against NCO Financial, the Court certifies a class with regard to the plaintiffs' ICAA claim, consisting of all natural persons residing in Illinois from whom NCO Financial demanded and collected payment of a debt allegedly owed to NCO Portfolio between June 8, 2006 and June 28, 2011 who did not release their claims as part of the settlement in *Caston-Palmer v. NCO Portfolio*. The Court directs the parties to meet and confer regarding the preparation of a notice to the members of the class and to submit an agreed proposed notice (or separate proposals if they cannot reach agreement) by no later than September 18, 2012. The case is set for a status hearing on September 20, 2012 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 11, 2012