**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of the class, | ) ) ) | |
| | ) | Judge Matthew F. Kennelly |
| Plaintiffs, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| -vs- | ) | Case No.: 1:11-cv-03918 |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| --------------------------------------------------------------) | | *consolidated with* |
| | ) | |
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of the class, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:11-cv-04651 |
| | ) | |
| -vs- | ) | |
| | ) | |
| NCO PORTFOLIO MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN
 & ISRAEL, L.L.C.
3850 N. Causeway Blvd.
Suite 200
Metairie, Louisiana 70002
Telephone 504-828-3700
Facsimile 504-828-3737
bshartle@sessions-law.biz

James K. Schultz
SESSIONS, FISHMAN, NATHAN
 & ISRAEL, L.L.C.
55 West Monroe St.
Suite 1120
Chicago, Illinois 60603
Telephone 312-578-0990
Facsimile 312-578-0991
jschultz@sessions-law.biz

*Attorneys for Defendants, NCO Financial Systems, Inc. and NCO Portfolio Management, Inc.*

## **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................1

II. PROCEDURAL HISTORY......................................................................................3

III. LAW AND ARGUMENT .......................................................................................5

    *A. Prior To January 1, 2008, NCOP Was Not Subject To*
    *The ICAA Licensing Requirement* ..................................................................6

    *B. Since January 1, 2008, NCOP Has Not Been Subject To*
    *The ICAA Licensing Requirement* ..................................................................9

        *1. NCOP Has Never Engaged In Debt Collection*...............................13

        *2. LVNV Funding Is Not Controlling* ..................................................17

    *C. Plaintiffs Are Not Entitled To The Requested Relief*..................................19

        *1. The ICAA Sets Forth The Exclusive Private Remedy*
        *For Violations Of The Licensing Requirement*...................................19

        *2. Disgorgement Is Neither Authorized Nor Appropriate* ...................23

IV. CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Averett v. Chicago Patrolmen's Federal Credit Union*,
2007 WL 952034 (N.D. Ill. 2007) ...........................................................................22

*Baer v. First Options of Chicago, Inc.*,
72 F.3d 1294 (7th Cir. 1995) ..................................................................................18

*Bailiff v. Village of Downers Grove*,
2011 WL 6318953 (N.D. Ill. 2011) .........................................................................16

*Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC*,
2009 WL 901011 (N.D. Ill. 2009) ......................................................................... 7-8

*Board of Trustees of Southern Illinois University v. Department of Human Rights*,
636 N.E.2d 528 (Ill. 1994).......................................................................................12

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
76 F.Supp.2d 868 (N.D. Ill. 1999) ...........................................................................23

*Creel v. Industrial Commission*,
301 N.E.2d 275 (Ill. 1973).......................................................................................11

*Downtown Disposal Services, Inc. v. City of Chicago*,
2012 WL 5359269 (Ill. 2012)...................................................................................18

*Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*,
972 F.2d 805 (7th Cir. 1992) ...................................................................................18

*Ergo v. International Merchant Services, Inc.*,
519 F.Supp.2d 765 (N.D. Ill. 2007) .........................................................................24

*Green v. J.C. Penney Auto Ins. Co., Inc.*,
806 F.2d 759 (7th Cir. 1986) ...................................................................................18

*Harrell v. City of Chicago Heights*,
1996 WL 51835 (N.D. Ill. 1996) .............................................................................11

*Illinois Consol. Telephone Co. v. Illinois Commerce Com'n*,
447 N.E.2d 295 (Ill. 1983).......................................................................................11

*Indiana Harbor Belt R. Co. v. American Cyanamid Co.*,
916 F.2d 1174 (7th Cir. 1990) .................................................................................18

*Kim v. Riscuity, Inc.*,
2006 WL 2192121 (N.D. Ill. 2006) ......................................................................... 8

*King v. First Capital Financial Services Corp.*,
828 N.E.2d 1155 (Ill. 2005) .................................................................................. 23

*Latona v. Carson Pirie Scott & Co.*,
1997 WL 109979 (N.D. Ill. 1997) ......................................................................... 12

*Leeb v. Pendrick Capital Partners, LLC*,
2012 WL 3135526 (N.D. Ill. 2012) ............................................................... 13 & 19

*LifeWise Master Funding v. Telebank*,
374 F.3d 917 (10th Cir. 2004) ................................................................................ 6

*Lindley v. Murphy*,
56 N.E.2d 832 (Ill. 1944) ...................................................................................... 15

*Livingston v. Meyers*,
129 N.E.2d 12 (Ill. 1955) ...................................................................................... 15

*LVNV Funding, LLC v. Trice*,
952 N.E.2d 1232 (Ill. App. Ct. 1st Dist. 2011) ................................................... 17-19

*National Educational Advertising Service, Inc. v. Cass Student Advertising Inc.*,
454 F.Supp. 71 (N.D. Ill. 1977) ............................................................................ 22

*Randazzo v. Harris Bank Palatine, N.A.*,
262 F.3d 663 (7th Cir. 2001) ............................................................................ 23-24

*Refrigeration Sales Co., Inc. v. Mitchell-Jackson, Inc.*,
575 F.Supp. 971 (N.D. Ill. 1983) ....................................................................... 20-21

*Rice v. Palisades Acquisition XVI, LLC*,
2008 WL 538921 (N.D. Ill. 2008) ........................................................................... 7

*S.E.C. v. Collins*,
2003 WL 21196236 (N.D. Ill. 2003) ...................................................................... 23

*S.E.C. v. Koenig*,
532 F.Supp.2d 987 (N.D. Ill. 2007) ...................................................................... 23

*Sherman v. Field Clinic*,
392 N.E.2d 154 (Ill. App. Ct. 1st Dist. 1979) ........................................................ 21

*Smith v. Prime Cable of Chicago*,
658 N.E.2d 1325 (Ill. App. Ct. 1st Dist. 1995)...........................................................23

*Spivey v. Adaptive Marketing LLC*,
622 F.3d 816 (7th Cir. 2010) ......................................................................................23

*Walter E. Heller & Company v. James Godbe Company*,
1985 WL 1384 (N.D. Ill. 1985) ...................................................................................22

*Western Nat. Bank of Cicero v. Village of Kildeer*,
167 N.E.2d 169 (Ill. 1960)...........................................................................................11

*Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat. Ins. Group*,
750 F.2d 619 (7th Cir. 1984) .......................................................................................18

*Wisniewski v. Asset Acceptance Capital Corp.*,
2009 WL 212155 (N.D. Ill. 2009) .................................................................................8

*Wolfram v. Halloway*,
361 N.E.2d 587 (Ill. App. Ct. 1st Dist. 1977)................................................................6

## Statutes and Rules

15 U.S.C. § 1692.............................................................................................................3

225 ILCS 425/1...............................................................................................................1

225 ILCS 425/2...............................................................................................9 & 11-13

225 ILCS 425/2.02 (2007 version) .......................................................................6 & 9

225 ILCS 425/2.03(5) .....................................................................................................2

225 ILCS 425/3...............................................................................................9 & 13

225 ILCS 425/3 (2007 version) ...............................................................................6-8

225 ILCS 425/3(a) (2007 version).............................................................................8

225 ILCS 425/3(d) ..........................................................................................9 & 13

225 ILCS 425/3(d) (2007 version).............................................................................8

225 ILCS 425/4.5...........................................................................................................19

225 ILCS 425/8a-1.................................................................................................15-16

225 ILCS 425/8.5.............................................................................................16

225 ILCS 425/8.6.............................................................................................16

225 ILCS 425/9................................................................................................19

225 ILCS 425/9.7.............................................................................................20

225 ILCS 425/14..............................................................................................19

225 ILCS 425/14a........................................................................................20-23

225 ILCS 425/14b............................................................................................20

815 ILCS 510/1...............................................................................................22

815 ILCS 510/3...............................................................................................22

2007 Ill. Legis. Serv. P.A. 95-437 (S.B. 1398).................................................9

2012 Ill. Legis. Serv. P.A. 97-1070 (H.B. 5016).....................................12-13 & 16

## Other Sources

2A Ill. Prac., UCC with Illinois Code Comments § 5/3-415.........................6

34 Ill. Law and Prac. Statutes § 60 ...............................................................21

34 Ill. Law and Prac. Statutes § 83 ...............................................................12

Restatement (Second) of Contracts § 333 ......................................................6

Defendants, NCO Financial Systems, Inc. ("NCO") and NCO Portfolio Management, Inc. ("NCOP"), submit this memorandum in support of Defendants' Motion for Summary Judgment.

## I. INTRODUCTION

These consolidated class actions are brought under the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1, *et seq*. While there are several related issues before the Court, the primary issue is whether NCOP, a debt buyer, was required to be licensed as a "collection agency" under the ICAA at any time from June 8, 2006 to June 28, 2011. To rule on this issue, the Court must consider the historical amendments to the ICAA.

Prior to January 1, 2008, a debt buyer that purchased accounts "without recourse" (*i.e.*, without the ability to resell the accounts to the seller for non-payment) was *not* required to be licensed as an ICAA collection agency when collecting on its purchased accounts. Effective January 1, 2008, the law changed. A debt buyer that actively collected its purchased accounts, *i.e.*, sent collection letters or made collection calls, effective January 1, 2008, was subject to the ICAA licensing requirement, regardless of whether the accounts were purchased "with recourse" or "without recourse." But this change in the law did *not* affect passive debt buyers, such as NCOP, who have never sent collection letters or made collection calls. In August 2012, the law was changed again. Effective January 1, 2013, *all* debt buyers, including passive debt buyers, will be subject to the ICAA licensing requirement.

With this legal backdrop, plaintiffs allege, on behalf of themselves and the first certified class, that NCOP violated the ICAA by purchasing and collecting consumer debts without first being licensed as an ICAA collection agency. Plaintiffs also allege, on behalf of themselves and the second certified class, that NCO violated the ICAA by collecting debts on behalf of NCOP,

1

when NCO allegedly knew NCOP had no legal right to purchase and collect the debts because the company was not a licensed ICAA collection agency. Plaintiffs' claims are without merit and defendants are entitled to summary judgment for at least 2 reasons.

*First*, NCOP has never been subject to the ICAA licensing requirement because NCOP has never been an ICAA "collection agency." NCOP has never been an ICAA "collection agency" because the company has never engaged in debt collection. NCOP has never sent collection letters, or made collection calls. At all times, NCOP has either forwarded its purchased Illinois accounts to an ICAA licensed collection agency (such as NCO) for collection, or an ICAA exempt law firm for the filing of collection lawsuits.[1] To be clear, all collection efforts on NCOP purchased debts in Illinois have always been undertaken by a properly licensed ICAA collection agency, or an ICAA exempt law firm. Under such circumstances, the ICAA licensing requirement has never applied to a debt buyer.

Further, as explained below, representatives from the Illinois Department of Financial and Professional Regulation ("IDFPR"), which has regulatory authority over the ICAA, have likewise concluded that passive debt buyers that are not actively attempting to collect debt, such as NCOP, are *not* required to be licensed as a collection agency under the ICAA. This conclusion is buttressed by the recent amendments to the ICAA, which beginning January 1, 2013, will require that *all* "debt buyers" be licensed. These amendments beg the ultimate question: If debt buyers were previously required to be licensed under all circumstances, as plaintiffs allege, what was the purpose of the amendments? And if the purpose of the amendments was to merely clarify existing law, as plaintiffs allege, why would the legislature make the effective date of the amendments January 1, 2013? Simply put, plaintiffs are wrong and their interpretation of the law is disproven by the recent amendments. Passive debt buyers

---

[1] The ICAA does *not* apply to licensed attorneys. 225 ILCS 425/2.03(5).

that are not actively attempting to collect debt, such as NCOP, are *not* required to be licensed as a collection agency under the ICAA until January 1, 2013.

**_Second_**, even if the Court assumes NCOP was required to be licensed under the ICAA, plaintiffs are not entitled to the requested relief. The ICAA specifically sets forth the procedure and remedy for violations of the ICAA licensing requirement. Plaintiffs are not entitled to any relief beyond what is enumerated in the statute. Plaintiffs, therefore, are not entitled to disgorgement, declaratory relief, or return of any appearance fees. And plaintiffs are not entitled to an injunction because defendants have never violated, nor are they currently violating, the ICAA licensing requirement. NCOP is now a defunct business and all of its accounts have been sold.

Moreover, considering the state of the law and the related equities, disgorgement—an equitable remedy—is clearly inappropriate here. To the extent NCOP was required to be licensed as a collection agency under the ICAA, no one was harmed by NCOP's failure to be licensed, *i.e.*, the company's failure to have a "piece of paper." It is undisputed that the debts were owed to NCOP and that all payments were voluntarily made, and that all contact with consumers was undertaken by a licensed collection agency, or licensed attorney, subject to regulatory oversight by the state of Illinois. In light of these undisputed facts, the voluntary payment doctrine also bars plaintiffs' disgorgement claim.

## II. PROCEDURAL HISTORY

On June 8, 2011, plaintiffs filed their Class Action Complaint against NCO, asserting class claims under the ICAA.[2] In addition, Hawthorne also asserted a claim against NCO under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Hawthorne's

---

[2] Docket No. 1, Case No. 11-03918.

3

FDCPA claim has been settled, leaving only plaintiffs' ICAA class claims.[3]

On June 8, 2011, plaintiffs filed a separate Class Action Complaint against NCOP in state court, asserting class claims under the ICAA.[4]  The lawsuit was subsequently removed to this Court on July 11, 2011.[5]

On January 30, 2012, the two class actions were consolidated before Judge Kennelly.[6]

On September 11, 2012, the Court certified two classes.[7]  For consolidated Case No. 11-03918 against NCO, the Court certified "a class with regard to the plaintiffs' ICAA claim, consisting of all natural persons residing in Illinois from whom NCO Financial demanded and collected payment of a debt allegedly owed to NCO Portfolio between June 8, 2006 and June 28, 2011 who did not release their claims as part of the settlement in *Caston-Palmer v. NCO Portfolio*."[8]  For consolidated Case No. 11-04651 against NCOP, the Court certified "a class consisting of all natural persons residing in Illinois from whom NCO Portfolio collected a debt between June 8, 2006 and June 28, 2011 who did not release their claims as part of the settlement in *Caston-Palmer v. NCO Portfolio*."[9]

As noted, the Court specifically *excluded* from both classes anyone who released their claims (including ICAA claims) pursuant to the class settlement reached in *Caston-Palmer*, which included "all individuals 'NCO Portfolio Management, Inc.,' 'NCO Portfolio Management,' or any other NCO entity sued in Illinois from January 1, 2008 to January 1, 2009."[10]  Plaintiffs opted-out of the settlement in *Caston-Palmer*; therefore, plaintiffs are the

---

[3] Docket No. 53, Case No. 11-03918, at n. 1.
[4] Docket No. 1, Case No. 11-04651.
[5] Id.
[6] Docket No. 33, Case No. 11-03918.
[7] Docket No. 47, Case No. 11-03918.
[8] Id. at p. 18.
[9] Id.
[10] Docket No. 114, Case No. 08-02818.

_only_ individuals in the certified classes who were sued by NCOP from January 1, 2008 to January 1, 2009.[11]

### III. LAW AND ARGUMENT

Plaintiffs allege that, both before and after January 1, 2008, a debt buyer in Illinois was required to be licensed as a collection agency under the ICAA before the company could legally forward its Illinois purchased accounts to an ICAA licensed collection agency for collection, or an ICAA exempt law firm for the filing of collection lawsuits.[12] Based upon this allegation, Hawthorne alleges NCOP was required to be licensed as a collection agency under the ICAA before the company could legally forward in 2006 a purchased Citibank debt he owed to NCO, an ICAA licensed collection agency, for collection.[13] Hawthorne also alleges NCOP was required to be licensed as a collection agency under the ICAA before the company could legally forward his account to the ICAA exempt law firm that sued him in March 2008 on behalf of NCOP.[14]

Similarly, Galvan alleges NCOP was required to be licensed as a collection agency under the ICAA before the company could legally forward a purchased AT&T Universal debt she owed to the ICAA exempt law firm that sued her in March 2008 on behalf of NCOP.[15] Galvan also alleges NCOP was required to be licensed as a collection agency under the ICAA before the company could thereafter forward her account to NCO for collection.[16]

As explained below, plaintiffs are wrong. Prior to January 1, 2008 and since, NCOP has not been subject to the ICAA licensing requirement because the company is not a "collection

---

[11] Id.
[12] Docket No. 1, Case No. 11-03918; Docket No. 1, Case No. 11-04651.
[13] Docket No. 1, Case No. 11-03918, at ¶¶ 24-38 & ¶¶ 48-59; Docket No. 1, Case No. 11-04651, at ¶¶ 17-28 & ¶¶ 36-51.
[14] Id.
[15] Id.
[16] Id.

5

agency."

## A. Prior To January 1, 2008, NCOP Was Not Subject To The ICAA Licensing Requirement

At all relevant times, a "collection agency" has been subject to the ICAA licensing requirement. However, before the amendment of the ICAA effective January 1, 2008, the pertinent statutory language confirmed a debt buyer was *not* required to be licensed as a collection agency under the ICAA when: (a) actively collecting, *i.e.*, sending collection letters or making collection calls, on accounts purchased "without recourse,"[17] or (b) forwarding purchased accounts to ICAA licensed collection agencies for collection, or ICAA exempt law firms for the filing of collection lawsuits. The rule derived from the definition of "collection agency," which only included entities offering collection services "for compensation." 225 ILCS 425/2.02 (2007 version) ("'Collection agency' or 'agency' means any person, association, partnership, corporation, or legal entity who, *for compensation*, either contingent or otherwise, or for other valuable consideration, *offers services to collect an alleged delinquent debt*.") (emphasis added). The rule also derived from the limiting language in 225 ILCS 425/3 (2007 version), which described when an entity "acts as a collection agency" and only included, in pertinent part, circumstances where the entity was engaged in debt collection "for others" or

---

[17] When an account is sold "with recourse," the buyer may sell back to the seller the account if the debtor fails to pay; when an account is sold "without recourse," the buyer may not sell back to the seller the account if the debtor fails to pay, but the buyer may still seek recourse against the seller for violations of any express or implied warranty, *e.g.*, the account is owed, the debtor is not deceased, and the debtor has not filed bankruptcy. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 925 (10th Cir. 2004) ("'Recourse' refers only to the liability of a seller of receivables to the purchaser if the underlying obligors fail to pay the receivables. A seller disclaims this liability, known as 'credit liability,' by selling the receivables 'without recourse.' However, although the sale of receivables 'without recourse' releases the seller from liability in case of the debtor's insolvency, the seller *retains liability* for breach of warranty, or 'warranty liability.'") (citation omitted) (emphasis in original); *Wolfram v. Halloway*, 361 N.E.2d 587 (Ill. App. Ct. 1st Dist. 1977) (a qualified endorsement absolves the endorser from liability on the instrument but it does not insulate him from liability based on a breach of warranties; hence, although note was endorsed "without recourse," the endorser, although absolved from liability on the instrument, could still be held liable to the payee for breach of warranty); 2A Ill. Prac., UCC with Illinois Code Comments § 5/3-415; Restatement (Second) of Contracts § 333.

purchased debts "with recourse" _and_ then actively collected those debts.[18]

In *Rice v. Palisades Acquisition XVI, LLC*, 2008 WL 538921 (N.D. Ill. 2008), the plaintiff alleged the defendant debt buyer was required to be licensed as a collection agency under the pre-January 1, 2008 version of the ICAA in order to file collection lawsuits. The court rejected the plaintiff's argument, concluding the defendant was not a collection agency under the ICAA:

> Palisades was not attempting to collect Rice's alleged debt for compensation or for anyone else's benefit; it was attempting to collect the alleged debt for itself. Consequently, Palisades was not required to be registered under the Illinois Department of Financial and Professional Regulation as required by the ICAA because the ICAA did not apply to Palisades at the time Rice filed the instant action.

*Rice*, 2008 WL 538921 at *3.

Like the debt buyer in *Rice*, NCOP has never offered collection services, or engaged in debt collection, "for compensation." At all times, NCOP has either forwarded its purchased Illinois accounts to ICAA licensed collection agencies for collection, or ICAA exempt law firms for the filing of collection lawsuits.[19] Therefore, NCOP was _not_ required to be licensed as a collection agency under the ICAA prior to January 1, 2008. *See Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 2009 WL 901011, *10 (N.D. Ill. 2009) (debt buyer not required to be

---

[18] In pertinent part, § 425/3 provided:
A person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it:

(a) Engages in the business of collection _for others_ of any account, bill or other indebtedness;

. . . .

(d) Buys accounts, bills or other indebtedness _with recourse and engages in collecting the same_; or

. . . .

225 ILCS 425/3 (2007 version) (emphasis added).
[19] Affidavit of Gregory R. Stevens, at ¶ 5.

licensed under pre-January 1, 2008 version of the ICAA because the company was not "seeking collection for compensation or on anyone's behalf").

Moreover, NCOP has never acted as a collection agency per 225 ILCS 425/3 (2007 version), which described a collection agency as an entity engaged in debt collection "for others," or an entity that purchases debts "with recourse" _and_ then actively collects those debts. 225 ILCS 425/3(a) and (d) (2007 version). First, 225 ILCS 425/3(a) (2007 version) is inapplicable because NCOP has never engaged in debt collection "for others."[20] Second, 225 ILCS 425/3(d) (2007 version) is inapplicable because NCOP has never purchased debts "with recourse"; instead, NCOP has always purchased debts "without recourse."[21] And NCOP has never actively collected its purchased debts; instead, NCOP has always purchased debts and then forwarded all Illinois debts to ICAA licensed collection agencies for collection, or ICAA exempt law firms for the filing of collection lawsuits.[22] Considering the undisputed facts, NCOP was not required to be licensed as a collection agency under the ICAA prior to January 1, 2008. This conclusion is also supported by the ICAA amendments that became effective on January 1, 2008, and the amendments that will become effective on January 1, 2013, which are discussed below.[23]

The Court should grant defendants' summary judgment motion and dismiss all claims against defendants based upon the failure of NCOP to be licensed as a collection agency prior to January 1, 2008.

---

[20] Stevens Aff., at ¶ 6.
[21] Id. at ¶ 7.
[22] Id. at ¶ 5. In this regard, _Kim v. Riscuity, Inc._, 2006 WL 2192121 (N.D. Ill. 2006), and _Wisniewski v. Asset Acceptance Capital Corp._, 2009 WL 212155 (N.D. Ill. 2009), are distinguishable. Both cases were decided on a motion to dismiss, where—unlike in this case—the defendant debt buyers were allegedly acting as collection agencies under 225 ILCS 425/3(d) (2007 version) because they were allegedly purchasing debts "with recourse" and then actively collecting those debts.
[23] Notably, this conclusion is further supported by the allegations in the related _Caston-Palmer_ case, where Mr. Daniel A. Edelman of EDELMAN, COMBS, LATTURNER & GOODWIN, LLC represented the class and acknowledged that debt buyers were not subject to the ICAA licensing requirement until January 1, 2008. _See_ Docket No. 59, Case No. 08-02818, at ¶¶ 9 & 13.

**B. *Since January 1, 2008, NCOP Has Not Been Subject To The ICAA Licensing Requirement***

Effective January 1, 2008, the definition of "collection agency" contained in 225 ILCS 425/2.02 was repealed. *See* 2007 Ill. Legis. Serv. P.A. 95-437 (S.B. 1398), at §§ 10 and 99. And the current, more expansive definition of "collection agency" was added to 225 ILCS 425/2. *Id.* at § 5. Currently, a "collection agency" is "any person who, in the ordinary course of business, regularly, *on behalf of himself or herself* or others, *engages in debt collection*." 225 ILCS 425/2 (emphasis added). Since these legislative changes, entities actively engaged in debt collection, *i.e.*, sending collection letters or making collection calls, have been subject to the ICAA licensing requirement, even if such actions were taken *on behalf of themselves*. The intent of the legislation was to cover debt buyers *actively engaged in debt collection*.

To ensure debt buyers actively engaged in debt collection are subject to the ICAA licensing requirement, the legislature also amended 225 ILCS 425/3, effective January 1, 2008. *See* 2007 Ill. Legis. Serv. P.A. 95-437 (S.B. 1398), at §§ 5 and 99. The legislature deleted the "with recourse" limitation from § 425/3(d). *Id.* Now an entity acts as a collection agency when the company "[b]uys accounts, bills or other indebtedness *and engages in collecting the same*," regardless of whether or not the debt buyer may sell the purchased debts back to the seller for non-payment. 225 ILCS 425/3(d) (emphasis added).

Despite these changes, an entity has never been subject to the ICAA licensing requirement, unless the entity *actively engages in debt collection*. Therefore, passive debt buyers that simply purchase debts and then forward those debts to ICAA licensed collection agencies for collection, or ICAA exempt law firms for the filing of collection lawsuits, have *never* been subject to the ICAA licensing requirement because they are *not* engaged in debt collection. In fact, in the related *Caston-Palmer* case, a representative of the IDFPR testified that debt buyers

9

that simply forward purchased accounts to ICAA licensed collection agencies for collection, or

ICAA exempt law firms for the filing of collection lawsuits, are _not_ subject to the ICAA

licensing requirement per the agency's interpretation of the ICAA.[24]  The Court should defer to

---

[24] Deposition of Daniel A. Kelber, at p. 19, ln. 6, to p. 22, ln. 17.  Daniel A. Kelber, senior legal counsel at the IDFPR, testified to the agency's "general agreement" of the "right way to look at" the licensing of debt buyers under the ICAA:

Q.     Okay.  Who first used the term, to your knowledge, "passive debt buyer"?
A.     One of those people who called me.
Q.     And you don't remember who it was?
A.     I do not.
Q.     And what was the context of the use of the term "passive debt buyer"?
A.     I was asked if passive debt buyers will need to be licensed under this new law, and now that I'm thinking about it, yes, it was clearly before the effective date of the act because we were having conversations in anticipation of licensing of these companies.  Somebody used that term and I said: "What does that mean?"
Q.     And what response did you get?
A.     I was told that they are purchasing debt and then either hiring a collection agency to collect on that debt or hiring an attorney to file suit on their behalf to collect the debt.
Q.     And do you recall how you responded?
A.     I responded by saying: "Let me get back to you."
Q.     Okay.  And then what did you do?
A.     I went and took a look at the issue and examined closely the language that had changed and other language defining "collection agency" and "debt" and "collections" and looking to determine where I thought this type of behavior would fall within or outside of the scope of the Act.
Q.     Did you do the research yourself –
A.     Yes, I did.
Q.     – or give it to someone else?
A.     I did the research.
Q.     What did you look at?
A.     The statute.
Q.     Anything else?
A.     No.
Q.     Did you look at any of the legislative history or debates that led up to the statute?
A.     I did not.
Q.     What conclusion did you reach?
A.     I reached the conclusion that that as described, as I described a passive debt buyer, it could be they're not collecting on the same.  The way that the term is used is entities that purchase debt and collect on the same.  Since in one of the two instances they are hiring a collection agency to collect on it, I felt that they were not collecting on the same, and in the other instance, they were using an attorney that was exempt from the Collection Agency Act and they were not directly collecting.  The attorney was doing it for them, and, therefore, they were not collecting on the same.

the IDFPR's reasonable interpretation and application of the ICAA licensing requirement. *See Harrell v. City of Chicago Heights*, 1996 WL 51835, *3 n. 3 (N.D. Ill. 1996) ("Although not binding, courts will generally give substantial weight and deference to interpretations of ambiguous statutes by the agency charged with its administration and enforcement."); *Illinois Consol. Telephone Co. v. Illinois Commerce Com'n*, 447 N.E.2d 295, 300 (Ill. 1983) ("It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute.").

Moreover, the recent amendments to the ICAA, which do not become effective until January 1, 2013, establish passive debt buyers have not previously been subject to the ICAA licensing requirement. "The interpretation placed upon a statute by the legislative department may go far to remove doubt as to its meaning, and it is proper for [courts] to consider the subsequent amendment to a statute in determining the intent and meaning of the statute prior to amendment. The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence." *Western Nat. Bank of Cicero v. Village of Kildeer*, 167 N.E.2d 169, 175 (Ill. 1960) (citations omitted) (gathering authorities); *see also Creel v. Industrial Commission*, 301 N.E.2d 275, 277-278 (Ill. 1973) (same).

Effective January 1, 2013, the ICAA will include a definition of "debt buyer" in 225

---

. . . .
Q.   Were your conclusions reflected in any other kind of memorandum or documents?
A.   Aside from these e-mails?
Q.   Yes.
A.   There may – you know, I don't think so. I think there was a conversation that I had with my supervisor, Mike Thompson, on the issue and other attorneys that are involved in general counsel, and *there was just a general agreement that that was the right way to look at it.*

Id. (emphasis added).

ILCS 425/2.  *See* 2012 Ill. Legis. Serv. P.A. 97-1070 (H.B. 5016), at §§ 5 and 99.  A debt buyer

will be "a person or entity that is engaged in the business of purchasing delinquent or charged-off

consumer loans or consumer credit accounts or other delinquent consumer debt for collection

purposes, whether it collects the debt itself or hires a third-party for collection or an attorney-at-

law for litigation in order to collect such debt."  *Id.* at § 5.  Such debt buyers will be subject to

the ICAA licensing requirement effective January 1, 2013.  *Id.* at §§ 5 and 99.

"Where the legislature has made a material change in a statute, the presumption is that the

amendment was intended to change the law."  *Latona v. Carson Pirie Scott & Co.*, 1997 WL

109979, *1 (N.D. Ill. 1997); *see also Board of Trustees of Southern Illinois University v.*

*Department of Human Rights*, 636 N.E.2d 528, 532 (Ill. 1994).  One authority explains the rule

in Illinois as follows:

> It is presumed that in adopting an amendment to a statute the General Assembly
> intended to make some change in the existing law.
>
> When a statute is amended it will not be presumed that a difference between the
> statutes was due to oversight or inadvertence by the General Assembly, but the
> presumption is that every amendment of a statute is made to effect some purpose.
> It is presumed that in adopting an amendment to a statute the General Assembly
> intended to make some change in the existing law, and under this presumption
> courts ordinarily will not construe a statute as it existed before an amendment in
> such a manner that the amendment serves no purpose.  So, a change in
> phraseology of a law by an amendment creates a presumption that it was intended
> to change the law as it formerly existed, and when words are stricken from a
> statute by an amendment it must be concluded that the General Assembly
> deliberately intended to change the law.

34 Ill. Law and Prac. Statutes § 83 (gathering authorities).

It is clear that the legislature intended to change the law through the recent amendments

and require for the first time that passive debt buyers be licensed under the ICAA.  The purpose

of the recent amendments was *not* to clarify existing law.  If the legislature intended to simply

clarify existing law, the legislature would not have provided for a period of time to comply with

the new law by making the effective date of the amendments January 1, 2013.

### *1. NCOP Has Never Engaged In Debt Collection*

NCOP has never been subject to the ICAA licensing requirement. NCOP has never engaged in debt collection.[25] NCOP has never sent collection letters.[26] NCOP has never made collection calls.[27] NCOP has never credit reported debts.[28] Instead, NCOP has always relied on third parties, either ICAA licensed collection agencies or ICAA exempt law firms, to collect purchased Illinois debts.[29] Therefore, NCOP has never fallen within the ICAA's definition of "collection agency," including the current definition in § 425/2, which only includes entities "engag[ing] in debt collection." 225 ILCS 425/2. Nor has NCOP ever acted as a collection agency under § 425/3, which currently includes a debt buyer that "[b]uys accounts, bills or other indebtedness and engages in collecting the same." 225 ILCS 425/3(d). Stated simply, passive debt buyers such as NCOP are *not* engaged in debt collection; they are "engaged in the business of purchasing delinquent or charged-off consumer loans or consumer credit accounts or other delinquent consumer debt for collection purposes." 2012 Ill. Legis. Serv. P.A. 97-1070 (H.B. 5016), at § 5 (adding definition of "debt collector" to 225 ILCS 425/2).

*Leeb v. Pendrick Capital Partners, LLC*, 2012 WL 3135526 (N.D. Ill. 2012) is instructive. In *Leeb*, the plaintiff (who was represented by the same attorneys representing plaintiffs here) alleged the defendant debt buyer violated the ICAA by purchasing Illinois debts and then forwarding those debts to an ICAA licensed collection agency for collection. The court granted the defendant debt buyer's motion to dismiss, concluding the debt buyer was not a collection agency under the ICAA. The court observed, "[u]nder the ICAA, a debt buyer is not a

---

[25] Stevens Aff., at ¶ 3.
[26] Id. at ¶ 4.
[27] Id.
[28] Id.
[29] Id. at ¶ 5.

collection agency unless it 'engages in collecting' the debts it has purchased. If a debt purchaser does not engage in collection activities, it is not considered a collection agency under the ICAA and does not need to be licensed by the state." *Leeb*, 2012 WL 3135526 at \*2. Finding the defendant debt buyer did not engage in debt collection, Judge Bucklo dismissed the plaintiff's ICAA claims and ruled:

> Plaintiff does not cite to any case in which a debt purchaser that has not engaged in any collection activities but has hired an independent and legally distinct third-party collection agency to collect the debt was held to be a collection agency under the ICAA. Pendrick made no demand for payment, did not file a lawsuit against plaintiff, and did not hire a legal representative to take any of those actions on its behalf. In the absence of such debt collection efforts, Pendrick does not fit the definition of a collection agency under the ICAA.

*Id.* at \*3.

Like the defendant debt buyer in *Leeb*, NCOP has never engaged in debt collection. Therefore, the Court should grant defendants' summary judgment motion and dismiss all claims against defendants based upon collection efforts undertaken by NCO or another ICAA licensed collection agency to collect on NCOP accounts.

Further, although *Leeb* does not address whether a debt buyer must be licensed under the ICAA in order to forward purchased Illinois accounts to an ICAA exempt law firm for the filing of collection lawsuits, logically, the same rule should apply. There is no meaningful distinction between a debt buyer that forwards purchased accounts to an ICAA licensed collection agency for collection, and one that forwards purchased accounts to an ICAA exempt law firm for the filing of collection lawsuits. In both circumstances, the debt buyer is acting passively through another entity or person. For this reason, the IDFPR have concluded such passive debt buyers are not subject to the ICAA licensing requirement.[30]

And even if an artificial distinction could be conceived between placement of purchased

---

[30] See footnote 24, infra.

14

accounts with an ICAA licensed collection agency for collection, and placement of purchased accounts with an ICAA exempt law firm for the filing of collection lawsuits, the recent amendments to the ICAA leave no doubt that there is no *legal distinction* and that passive debt buyers are not subject to the ICAA licensing requirement until 2013. Again, the recent amendments must mean something, but under plaintiffs' interpretation of the law, the recent amendments changed nothing for passive debt buyers. The Court should not adopt such an illogical interpretation of the law. *See Livingston v. Meyers*, 129 N.E.2d 12, 18 (Ill. 1955) (rejecting the proposed interpretation because the interpretation "in effect would result in no practical change in existing law"); *Lindley v. Murphy*, 56 N.E.2d 832, 838 (Ill. 1944) (rejecting the proposed interpretation because, if accepted, "the amendment served no purpose, but was merely declaratory of the law already in existence. The presumption is, however, that the amendment was intended to change the law.").

Additionally, application of the current ICAA to passive debt buyers makes no sense when one considers 225 ILCS 425/8a-1, which is the *only* ICAA provision pertaining to the filing of collection lawsuits and does *not* contemplate the forwarding of an account *from a debt buyer* to an ICAA exempt law firm for the filing of a collection lawsuit.[31] When the recent amendments take effect on January 1, 2013, a debt buyer will not be subject to 225 ILCS 425/8a-

---

[31] In pertinent part, § 425/8a-1 provides:

> No account may be referred by a collection agency to an attorney unless, prior to placing an account with an attorney for further collection action, each account creditor is notified in writing by the collection agency of the collection agency's intent to refer the account to an attorney. The account may not be referred to an attorney if a creditor notifies the collection agency within 5 days after receiving the notice that the creditor is withholding authorization for the account to be referred to an attorney. The notice requirement under this subsection may, in the alternative, be satisfied if the creditor signs the complaint that will be filed in the circuit court seeking judgment on the debt owed. A collection agency shall not take any action that in fact or in appearance interferes with the professional relationship between the attorney and the creditor.

225 ILCS 425/8a-1.

1. *See* 2012 Ill. Legis. Serv. P.A. 97-1070 (H.B. 5016), at §§ 5 and 99 (enacting 225 ILCS 425/8.5 and 225 ILCS 425/8.6). Again, the recent amendments establish passive debt buyers are not subject to the current ICAA. The Court should grant defendants' summary judgment motion and dismiss all claims against NCOP based upon collection lawsuits filed by ICAA exempt law firms on behalf of NCOP.

At a minimum, the Court should grant defendants' summary judgment motion and dismiss all *class claims* against NCOP based upon collection lawsuits filed by ICAA exempt law firms on behalf of NCOP after January 1, 2008. Plaintiffs are the only two individuals in the certified classes who were sued by NCOP after January 1, 2008. The Court specifically excluded from both certified classes anyone who released their claims in *Caston-Palmer*, which included a class of all individuals NCOP sued in Illinois from January 1, 2008 to January 1, 2009.[32] Plaintiffs opted-out of the *Caston-Palmer* settlement, so their ICAA claims were not released in *Caston-Palmer*; however, the ICAA claims of everyone else NCOP sued in Illinois from January 1, 2008 to January 1, 2009 were released in *Caston-Palmer*.[33] And NCOP has not filed any collection lawsuits since January 1, 2009.[34] Considering the lack of numerosity, a class action cannot be maintained against NCOP for the filing of collection lawsuits after January 1, 2008. *See Bailiff v. Village of Downers Grove*, 2011 WL 6318953 (N.D. Ill. 2011) (finding numerosity under Fed. R. Civ. P. 23(a)(1) is generally satisfied if the class includes more than 40 class members). Plaintiffs' class claims against NCOP based upon collection lawsuits filed by ICAA exempt law firms on behalf of NCOP after January 1, 2008 should, therefore, be dismissed.

---

[32] Docket No. 47, Case No. 11-03918, at p. 18; Docket No. 114, Case No. 08-02818.
[33] Id.
[34] Stevens Aff., at ¶ 8.

### *2. LVNV Funding Is Not Controlling*

Plaintiffs heavily rely upon the Illinois Appellate Court's decision in *LVNV Funding, LLC v. Trice*, 952 N.E.2d 1232 (Ill. App. Ct. 1st Dist. 2011), where the court reversed the trial court's denial of the debtor's motion to vacate a judgment entered against him by the debt buyer that was allegedly subject to the ICAA licensing requirement.  In reversing the trial court, the court ruled the judgment entered against the debtor was potentially void and the debtor did not waive the right to attempt to set aside the judgment as void.  The court remanded the case for further proceedings regarding any factual disputes.  *See LVNV Funding*, 952 N.E.2d at 1237 ("We find that [the debtor] has alleged adequate grounds for vacating the judgment entered in favor of [the debt buyer].  If [the debt buyer] disputes the accuracy of [the debtor's] factual allegations, the trial court should hold an evidentiary hearing on the issue before deciding whether to grant [the debtor's] motion to vacate the judgment.").  On rehearing, the court further clarified that its ruling was *not* definitive on the licensing issue, and that the trial court could hear further argument on whether the debt buyer was in fact subject to the ICAA licensing requirement.  *Id.* ("In a petition for rehearing, [the debt buyer] makes several new factual allegations and several new arguments never presented in the trial court, including constitutional arguments, for denying [the debtor's] section 2-1401 petition.  We do not intend to foreclose [the debt buyer] from proving those facts and raising those arguments at the evidentiary hearing when the trial court, on remand, considers [the debtor's] petition in light of this opinion.").

Plaintiffs' focus on *LVNV Funding* is misplaced for at least three reasons.  First, *LVNV Funding* does *not* analyze the legal issue before this Court regarding whether a passive debt buyer is subject to the ICAA licensing requirement.  At most, the decision implies, without any explanation, that a debt buyer that forwards purchased Illinois accounts to an ICAA exempt law

17

firm for the filing of collection lawsuits may be subject to the ICAA licensing requirement. When read in proper context, however, *LVNV Funding* merely addresses one possible consequence of a collection agency's failure to be licensed.[35]

Second, this Court is not bound to follow *LVNV Funding*. When deciding a state law issue, "[federal courts] must apply the state law that would be applied in th[e] context by the Illinois Supreme Court. Intermediate appellate court cases are useful *but not binding evidence of what the Illinois Supreme Court would do in a similar case.*" *Green v. J.C. Penney Auto Ins. Co., Inc.*, 806 F.2d 759, 761 (7th Cir. 1986) (citation omitted) (emphasis added); *see also Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1301-1302 (7th Cir. 1995) (same). "Even when a state's intermediate appellate decisions are uniform, or at least reasonably so, . . . [federal courts] are not bound by them." *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805, 814 (7th Cir. 1992). "[Federal courts] are not required to follow even the *holdings* of intermediate state appellate courts if persuaded that they are not reliable predictors of the view the state's highest court would take." *Indiana Harbor Belt R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1176 (7th Cir. 1990); *see also Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat. Ins. Group*, 750 F.2d 619, 624 (7th Cir. 1984) ("[A]n intermediate appellate court decision is not binding evidence of state law in circumstances when it is not a good predictor of what the state's highest court would do in a similar case[.]"). To the extent *LVNV Funding* ruled a debt buyer that forwards purchased Illinois accounts to an ICAA exempt law firm for the filing of collection lawsuits is subject to the ICAA licensing requirement, this Court should not follow the decision

---

[35] *LVNV Funding* is also questionable in light of the Illinois Supreme Court's recent decision in *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 WL 5359269 (Ill. 2012), where the court ruled actions taken by a non-attorney on behalf of a corporation did not render the proceedings "void *ab initio*." In rendering its decision, the court held "there is no automatic nullity rule. Instead, the circuit court should consider the circumstances of the case and the facts before it in determining whether dismissal is proper." *Downtown Disposal Services*, 2012 WL 5359269 at *6.

for the reasons discussed above.

Third, *LVNV Funding* did not involve the forwarding of purchased Illinois accounts to an ICAA licensed collection agency for collection. Therefore, the decision is not authoritative at all regarding whether a debt buyer is subject to the ICAA licensing requirement when merely forwarding purchased Illinois accounts to ICAA licensed collection agencies for collection. As explained above, a debt buyer is not subject to the ICAA licensing requirement under such circumstances. *See Leeb*, 2012 WL 3135526 at *3.

### C. Plaintiffs Are Not Entitled To The Requested Relief

Plaintiffs seek, on behalf of themselves and the two classes, the following relief for defendants' alleged violations of the ICAA: disgorgement; a declaratory judgment that any unpaid balances are released; damages in an amount equal to the total amount of all appearance fees paid by the class members in response to the NCOP lawsuits; and, an injunction prohibiting NCOP from engaging as a collection agency until the company obtains a license.[36]

Even if the Court assumes NCOP was required to be licensed under the ICAA, plaintiffs are not entitled to the requested relief.

### 1. The ICAA Sets Forth The Exclusive Private Remedy For Violations Of The Licensing Requirement

A civil penalty may be imposed against anyone engaged in debt collection without a license under the ICAA.[37] Engaging in debt collection without a license is a Class A misdemeanor.[38] If a person previously convicted of engaging in debt collection without a license

---

[36] Docket No. 54, at pp. 21-22.
[37] 225 ILCS 425/4.5 ("Any person who practices, offers to practice, attempts to practice, or holds oneself out to practice as a collection agency without being licensed under this Act shall, in addition to any other penalty provided by law, pay a civil penalty to the Department in an amount not to exceed $5,000 for each offense as determined by the Department."); 225 ILCS 425/9.
[38] 225 ILCS 425/14 ("Engaging in the collection of debts without first having obtained a certificate pursuant to this Act, or carrying on such business after expiration of the certificate or after receipt of a

violates the ICAA again, the person is guilty of a Class 4 felony.[39]  The ICAA authorizes the

Illinois Attorney General to bring an action for certain "knowing violations" of the ICAA.[40]

      The ICAA also authorizes any person to bring an action in the name of the "People of the

State of Illinois" against an unlicensed collection agency.  *See* 225 ILCS 425/14a.  In relevant

part, the ICAA provides:

> The Director, the Attorney General, the State's Attorney of any county in the
> State, or any person may maintain an action in the name of the People of the State
> of Illinois, and may apply for injunctive relief in any circuit court to enjoin such
> entity from engaging in such practice.  Upon the filing of a verified petition in
> such court, the court, if satisfied by affidavit or otherwise that such entity has
> been engaged in such practice without a valid and current license, may enter a
> temporary restraining order without notice or bond, enjoining the defendant from
> such further practice.  Only the showing of nonlicensure, by affidavit or
> otherwise, is necessary in order for a temporary injunction to issue.  A copy of the
> verified complaint shall be served upon the defendant and the proceedings shall
> thereafter be conducted as in other civil cases except as modified by this Section.
> If it is established that the defendant has been or is engaged in such unlawful
> practice, the court may enter an order or judgment perpetually enjoining the
> defendant from further practice.  In all proceedings hereunder, the court, in its
> discretion, may apportion the costs among the parties interested in the action,
> including cost of filing the complaint, service of process, witness fees and
> expenses, court reporter charges and reasonable attorneys' fees.  In case of
> violation of any injunctive order entered under the provisions of this Section, the
> court may summarily try and punish the offender for contempt of court.  Such
> injunction proceedings shall be in addition to, and not in lieu of, all penalties and
> other remedies provided in this Act.

*Id.*

      "Illinois courts subscribe to the maxim 'expressio unius exclusio alterius.'"  *Refrigeration*

---

notice of revocation or suspension of the certificate is a Class A misdemeanor.  The penalties provided by
this Act shall not be exclusive, but shall be in addition to all other penalties or remedies provided by
law."); 225 ILCS 425/14b ("Any entity that practices or offers to practice as a collection agency in this
State without being licensed for that purpose, or whose license has been suspended or revoked, or that
violates any of the provisions of this Act for which no specific penalty has been provided herein, is guilty
of a Class A misdemeanor.").
[39] 225 ILCS 425/14b ("Any entity that has been previously convicted under any of the provisions of this
Act and that subsequently violates any of the provisions of this Act is guilty of a Class 4 felony.  In
addition, whenever any entity is punished as a subsequent offender under this Section, the Director shall
proceed to obtain a permanent injunction against such entity under Section 14a of this Act.").
[40] 225 ILCS 425/9.7.

*Sales Co., Inc. v. Mitchell-Jackson, Inc.*, 575 F.Supp. 971, 975 n. 7 (N.D. Ill. 1983) (gathering authorities). One authority describes the rule as follows:

> A rule of construction to the effect that the enumeration of certain things in a statute implies the exclusion of all others is applicable to aid the court in ascertaining the intent of the General Assembly when it is not clearly manifest from the language of the statute.
>
> It is a fundamental principle of statutory construction embodied in the maxim "expressio unius exclusio alterius," that the mention or enumeration of one or more certain things or modes of action in a statute excludes all other things or modes of action not mentioned.

34 Ill. Law and Prac. Statutes § 60 (gathering authorities).

Under the well-established maxim "expressio unius exclusio alterius," plaintiffs are not entitled to any relief beyond what is enumerated in 225 ILCS 425/14a. Notably, the ICAA does not grant a private remedy for violation of any ICAA provision, *except* the licensing requirement. This fact strongly suggests § 425/14a sets forth the *exclusive private remedy* for violations of the *licensing requirement*.

Moreover, § 425/14a specifically sets forth *what may be recovered* in a private cause of action for violation of the ICAA licensing requirement.[41] Section 425/14a does *not* provide for recovery of "damages," whether they be "actual," "compensatory," "punitive," or "exemplary"; nor does the statute provide for "restitution," "disgorgement," or declaratory relief of any kind. Instead, the statute only provides for potential injunctive relief and, under certain circumstances, recovery of costs and attorneys' fees. *See* 225 ILCS 425/14a.

---

[41] In this regard, plaintiffs' reliance upon *Sherman v. Field Clinic*, 392 N.E.2d 154 (Ill. App. Ct. 1st Dist. 1979), and other cases for the purported right to recover "actual damages" under the ICAA is misplaced. *Sherman* related to whether there was an implied cause of action under the ICAA for violations of *other* substantive provisions contained in the ICAA, *not* the licensing requirement, for which the ICAA contains an express (albeit limited) private remedy. Indeed, *Sherman* requires the Court to consider whether the ICAA "indicates an intent to limit the remedies available to those . . . enumerated in the Act." *Sherman*, 392 N.E.2d at 161. Section 425/14a strongly indicates an intention to limit the remedies available for a violation of the licensing requirement.

21

The private remedy set forth in § 425/14a for a violation of the ICAA licensing requirement is similar to the private remedy set forth in the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1, *et seq.* Under the UDTPA, a person may seek injunctive relief and, under certain circumstances, recover costs and attorneys' fees for filing the lawsuit. *See* 815 ILCS 510/3. The UDTPA does not provide for recovery of damages. Several courts, therefore, have dismissed UDTPA claims seeking damages. *See, e.g., Walter E. Heller & Company v. James Godbe Company*, 1985 WL 1384, *1 (N.D. Ill. 1985) ("Because injunctive relief is the exclusive remedy under the UDTPA, Count II—which seeks monetary damages only—fails to state a claim under that Act."); *National Educational Advertising Service, Inc. v. Cass Student Advertising Inc.*, 454 F.Supp. 71, 73 (N.D. Ill. 1977).

Like the private remedy under the UDTPA, the private remedy under the ICAA for a violation of the licensing requirement only provides for injunctive relief and costs and attorneys' fees for filing the lawsuit. A plaintiff is not entitled to any further relief for a violation of the ICAA licensing requirement. Therefore, the Court should grant defendants' summary judgment motion, and dismiss plaintiffs' requests for disgorgement, declaratory relief, and return of appearance fees. *See Averett v. Chicago Patrolmen's Federal Credit Union*, 2007 WL 952034, *4 (N.D. Ill. 2007) ("The Illinois statute's inclusion of a section devoted exclusively to damages allowing only for 'make whole' relief reveals the Illinois legislature's intent to exclude the availability of other types of damages for violation of the statute.").

Further, an injunction may be entered against an entity under § 425/14a *only* if the entity has been or is engaged in debt collection without a valid and current license. *See* 225 ILCS 425/14a. As explained above, defendants have never violated, nor are they currently violating, the ICAA licensing requirement. And NCOP is now effectively a defunct business, which no

longer owns any debt, and there is no likelihood that defendants will engage in any future conduct prohibited by the ICAA.[42]  Therefore, the Court should grant defendants' summary judgment motion, and dismiss plaintiffs' requests for injunctive relief, costs, and attorneys' fees under § 425/14a.

### 2. Disgorgement Is Neither Authorized Nor Appropriate

"Disgorgement is an equitable, not a punitive remedy, and should be fashioned so as to deprive [the defendant] of the unjust enrichment he derived from his [legal] violations." *S.E.C. v. Koenig*, 532 F.Supp.2d 987, 994 (N.D. Ill. 2007); *see also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F.Supp.2d 868, 873 (N.D. Ill. 1999) ("Disgorgement is an equitable remedy based upon the theory of unjust enrichment."). "The district court has broad discretion in deciding whether to award disgorgement at all and, if awarded, in fixing the amount to be disgorged." *S.E.C. v. Collins*, 2003 WL 21196236, *5 (N.D. Ill. 2003).

Considering the state of the law and the related equities, disgorgement is clearly inappropriate here.  No one was harmed by NCOP's actions or omissions and all payments were voluntarily made.  In light of these undisputed facts, the voluntary payment doctrine also bars plaintiffs' disgorgement claim.  *See, e.g.*, *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1330 (Ill. App. Ct. 1st Dist. 1995) ("Absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable."); *King v. First Capital Financial Services Corp.*, 828 N.E.2d 1155 (Ill. 2005); *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 667 (7th Cir. 2001).[43]

---

[42] Stevens Aff., at ¶ 8.

[43] Mistake of fact is *not* met by simply pleading ignorance.  The payor seeking restitution cannot sit idly by and later claim lack of knowledge.  "Where . . . 'the plaintiff's lack of knowledge could be attributed to its lack of investigation into the defendant's claim of liability and the basis upon which the defendant was seeking the payment,' the Illinois courts have rejected a mistake of fact claim." *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 824 (7th Cir. 2010) (brackets and citation omitted).  Said another way,

23

## IV. CONCLUSION

Based upon the foregoing, defendants respectfully request this Court grant their summary judgment motion and dismiss the claims with prejudice.

Respectfully submitted,

/s/ James K. Schultz
Attorney for NCO Financial Systems, Inc. and NCO Portfolio Management, Inc.

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
55 Enhanced Monroe Street, Suite 1120
Chicago, IL 60603
Telephone: 312-578-0990
Facsimile: 312-578-0991
jschultz@sessions-law.biz

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
Lakeway Two, Suite 200
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone: 504-828-3700
Facsimile: 504-828-3737
bshartle@sessions-law.biz

Attorneys for NCO Financial Systems, Inc. and NCO Portfolio Management, Inc.

---

"failure to recognize error in making a voluntary payment does not constitute mistake of fact under the doctrine when the relevant facts were not obscured or inaccessible." *Ergo v. International Merchant Services, Inc.*, 519 F.Supp.2d 765, 774 (N.D. Ill. 2007). Plaintiffs did not inquire into the licensing status of NCOP prior to making payments, so no payment was the result of any mistake of fact. At worst, plaintiffs made voluntary payments based upon a mistake of law, which is no basis for recovery. *See Randazzo*, 262 F.3d at 667-668.

24

## CERTIFICATE OF SERVICE

I certify that on this 14th day of November 2012 a copy of the foregoing **Memorandum of Law in Support of Defendants' Motion for Summary Judgment** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiffs' counsel, as described below. Parties may access this filing through the Court's system.

        Keith J. Keogh
        Craig M. Shapiro
        Timothy J. Sostrin
        KEOGH LAW, LTD.
        101 North Wacker Drive, Suite 605
        Chicago, IL 60606
        Telephone: 312-726-1092
        Facsimile: 312-726-1093
        keith@keoghlaw.com
        cshapiro@keoghlaw.com
        tsostrin@keoghlaw.com

                        /s/ James K. Schultz
                        Attorney for NCO Financial Systems, Inc. and NCO
                        Portfolio Management, Inc.

\\sfnfs02\prolawdocs\6947\6947-27767\Galvan, Rocio and Hawthorne, Joseph and People of the State of\944243.doc

25