IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 11 C 3918 |
| NCO FINANCIAL SYSTEMS, INC., | ) ) | |
| Defendant. | ) | |
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of a class, and PEOPLE OF THE STATE OF ILLINOIS ex rel. ROCIO GALVAN and JOSEPH HAWTHORNE, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 11 C 4651 |
| NCO PORTFOLIO MANAGEMENT, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Rocio Galvan and Joseph Hawthorne, on behalf of themselves and two certified classes, have sued NCO Portfolio Management, Inc. (NCO Portfolio) and NCO Financial Systems, Inc. (NCO Financial) under the Illinois Collection Agency Act

(ICAA).[1] Plaintiffs contend that NCO Portfolio violated the ICAA by attempting to collect on debts it owned and that NCO Financial violated the ICAA by undertaking efforts to collect the debts for NCO Portfolio despite knowing that NCO Portfolio had no right to collect. Both sides have moved for summary judgment. For the reasons stated below, the Court grants the defendants' motion and denies the plaintiffs' motion.

## Background

NCO Portfolio and NCO Financial are both corporations whose principal place of business is Pennsylvania. Between June 8, 2006 and June 28, 2011, NCO Portfolio purchased a large amount of consumer debt accounts allegedly owed by Illinois consumers. NCO Portfolio then referred those accounts to its sister company, NCO Financial, for purposes of collection. NCO Portfolio also hired a law firm to initiate collection lawsuits against certain consumers in Illinois state court. As a result of these efforts, plaintiffs made payments to NCO Financial or the Illinois law firm that NCO Portfolio retained.

Although NCO Financial is registered in Illinois as a collection agency, NCO Portfolio is not. According to Gregory Stevens, NCO Financial's vice president of audit and compliance, NCO Portfolio has stopped referring its accounts to the law firm for purposes of filing suit, and the company is currently defunct.

The Court previously granted plaintiffs' motion for class certification. *Galvan v. NCO Fin. Sys., Inc.*, Nos. 11 C 3918 & 11 C 4651, 2012 WL 3987643 (N.D. Ill. Sept. 11, 2012). Specifically, the Court certified two related classes, consisting of: (1) all Illinois residents from whom NCO Portfolio collected a debt between June 8, 2006 and June

---

[1] Hawthorne also sued NCO Financial under the federal Fair Debt Collection Practices Act, but that claim was not part of the class certification order.

28, 2011 who did not release their claims as part of a settlement in the case of *Caston-Palmer v. NCO Portfolio Management, Inc.*, Case No. 08 C 2818 (N.D. Ill.); and (2) all Illinois residents from whom NCO Financial demanded and collected payment of a debt allegedly owed to NCO Portfolio between June 8, 2006 and June 28, 2011 who did not release their claims as a part of the *Caston-Palmer* settlement.

## Discussion

Summary judgment is appropriate when the evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 898 (7th Cir. 2011). The nonmoving party cannot rest on its pleadings alone and must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegal v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotation marks omitted). When cross-motions for summary judgment are filed, a court applies the same standard to each motion. *Harms v. Lab. Corp. of Am.*, 155 F. Supp. 2d 891, 906 (N.D. Ill. 2001); *Stimsonite Corp. v. Nightline Markers, Inc.*, 33 F. Supp. 2d 703, 705 (N.D. Ill. 1999). Because, however, the two parties' motions include overlapping issues, the Court will address both motions together.

Plaintiffs argue that NCO Portfolio is a collection agency, and that as such, it violated section 4 of the ICAA when it operated in Illinois and engaged in the business of collecting debts without first registering with the state. Plaintiffs argue that NCO Portfolio acted as a collection agency when it "directed" NCO Financial to contact Illinois consumers to collect payment on the consumer debt accounts that NCO Portfolio owned. Pls.' Brief at 7. Plaintiffs also contend that NCO Portfolio acted as a collection

agency by referring its accounts to an Illinois law firm, which initiated collection lawsuits against plaintiffs in Illinois state court. With regard to NCO Financial, plaintiffs contend that it knew NCO Portfolio was operating in violation of the ICAA and consequently had no right to collect the alleged debts. When NCO Financial contacted members of the plaintiff class to collect from them on behalf of NCO Portfolio despite that knowledge, plaintiffs contend, NCO Financial ran afoul of sections 9(a)(20), 9(a)(26), and 9(a)(29) of the ICAA.

Defendants argue that NCO Portfolio was not required to register as a collection agency under the ICAA because the Act, which was recently amended, did not apply to NCO Portfolio at any point between June 8, 2006 and June 28, 2011. Because NCO Portfolio did not violate the ICAA by failing to register as a collection agency, defendants argue, NCO Financial did not run afoul of the Act by undertaking collection efforts on the debts held by NCO Portfolio. Defendants alternatively argue that the ICAA does not allow for the relief that plaintiffs have requested.

**A.    The ICAA amendments**

Section 4 of the ICAA requires collection agencies to register in Illinois if they "operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness . . . ." 225 ILCS 425/4.

The Act's definition of a "collection agency" was modified twice between June 2006 and June 2011, the time frame relevant to this lawsuit. From June 2006 until January 2008, section 2.02 defined "collection agency" as "any person, association,

4

partnership, corporation, or legal entity who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged delinquent debt." *Id.* § 425/2.02 (2005) (repealed Jan. 1, 2008). Section 3 of the ICAA provided that a legal entity acts as a collection agency when, among other things, it "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same . . . ." *Id.* § 425/3(d) (2005) (amended 2008).[2]

In January 2008, the Illinois legislature amended the ICAA, and both statutory definitions of the term "collection agency" changed. First, the legislature repealed section 2.02 and added a new definition of collection agency to section 2: "'Debt collector,' 'collection agency,' or 'agency' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." 225 ILCS 425/2 (2008) (amended 2013). Second, although section 3 remained largely the same, the words "with recourse" were deleted from subsection (d). *Id.* § 425/3(d) (2008) (entity acts as collection agency when it "[b]uys accounts, bills or other indebtedness and engages in collecting the same").

The Illinois legislature amended the ICAA again in January 2013, adding two new provisions that specifically addressed "debt buyers." Section 8.5 of the statute provides that "debt buyer[s] shall be subject to all of the terms, conditions, and requirements of this Act," except for a few enumerated exceptions laid out in section 8.6. 225 ILCS 425/8.5–8.6 (2013).

**B.     NCO Portfolio's control over NCO Financial**

Plaintiffs argue that because NCO Portfolio "directed" NCO Financial to contact

---

[2] As discussed more fully later in this decision, it is not at all clear why the ICAA has two separate provisions that define what a collection agency is.

5

the plaintiffs to collect their alleged debt, NCO Portfolio acted as a collection agency without registering with the state, in violation of the ICAA. It appears that NCO Portfolio and NCO Financial were both wholly owned by the same parent company at one point in time. Plaintiffs have offered no evidence, however, that NCO Portfolio ever contacted the alleged debtors directly. Instead, NCO Portfolio referred its accounts to NCO Financial—a registered collection agency—which in turn contacted the debtors to collect the debts. Plaintiffs have similarly failed to offer any evidence that NCO Portfolio had any control over NCO Financial's contacts with debtors. Plaintiffs have thus failed to provide evidence from which a reasonable jury could conclude that NCO Portfolio "engage[d] in debt collection" under the ICAA, requiring the company to obtain certification from the state, simply by referring its accounts to a registered collection agency. *Id.* § 425/2.

Plaintiffs cite to a line of cases decided under the federal Fair Debt Collection Practices Act, holding that a communication between a debt collector and a debtor need not specifically demand payment on the debt in order to be considered a communication "in connection with an attempt to collect a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) (offer to discuss repayment options); *Ruth v. Triumph P'ship*, 577 F.3d 790, 798–99 (7th Cir. 2009) (defendants' notice letter included in the same envelope as collection demand). Leaving aside that these cases interpret a federal statute, not the ICAA, the defendants in *Gburek* and *Ruth* were communicating directly with the alleged debtors. *Gburek*, 614 F.3d at 382; *Ruth*, 577 F.3d at 793. In this case, by contrast, NCO Portfolio did not communicate with debtors directly but instead retained NCO Financial, a legally distinct entity that was registered as a

6

collection agency, to collect the debts on its behalf. *See Leeb v. Pendrick Capital Partners, LLC*, 891 F. Supp. 2d 1002, 1005 (N.D. Ill. 2012) (debt purchaser's referral of accounts to third-party collection agency with no direct contact with the alleged debtors did not render debt purchaser a collection agency under the ICAA). As such, NCO Portfolio did not "engage[] in debt collection" when it referred the accounts to NCO Financial. 225 ILCS 425/2 (2008). Because plaintiffs have not shown that NCO Portfolio communicated with the alleged debtors directly or exerted control over the way in which NCO Financial attempted to collect the debts, plaintiffs are not entitled to summary judgment on this ground.

**C.    NCO Portfolio's referral to an Illinois law firm**

Plaintiffs also argue that when NCO Portfolio referred its accounts to an Illinois law firm to initiate collection lawsuits on its behalf, it acted as a collection agency for purposes of the ICAA. Thus the Court must determine whether NCO Portfolio "engage[d] in debt collection" under section 2 or "engage[d] in collecting" the debts that it previously purchased under section 3(d) by filing lawsuits in Illinois state court against Illinois consumers to recover on debts that it had purchased from third-party creditors. *Id.* § 425/2–3. Previous decisions by judges in this district (including by the undersigned judge) have not addressed this precise question. *See Leeb*, 891 F. Supp. 2d at 1005; *Wisniewski v. Asset Acceptance Capital Corp.*, No 08 C 2793, 2009 WL 212155, at *1–2 (N.D. Ill. Jan. 29. 2009); *Kim v. Riscuity, Inc.*, No. 06 C 1585, 2006 WL 2192121, at *1 (N.D. Ill. July 31, 2006) (Kennelly, J.). The Court concludes that NCO Portfolio did not act as a collection agency by referring the accounts to a law firm for the purpose of filing suit.

7

It is difficult to discern why the ICAA presents two overlapping but not identical definitions of a "collection agency." The statute is not exactly a model of clarity in this regard. The legislative history also reveals little. Nothing in the ICAA, however, suggests that the legislature intended to require an entity to register as a collection agency as a prerequisite to filing suit to collect a debt the entity owns. Section 8a-1 specifically addresses a collection agency's referral of an account to an attorney for litigation and provides additional requirements that the agency must satisfy before referring the account. *Id.* § 425/8a-1. The existence of section 8a-1 indicates that the legislature considered litigation to be separate and distinct from the conduct that would render a company a "collection agency" in the first place such that it must register with the state. There is no basis to doubt that the legislature knew that litigation is a possible consequence of an entity's ownership of consumer debt. Thus the fact that the legislature did not provide that filing a lawsuit (or referring an account to an attorney for litigation) amounts to "act[ing] as a collection agency" counsels against a conclusion that initiating litigation is sufficient to trigger the ICAA's registration requirement. *See In re O.H.*, 329 Ill. App. 3d 254, 260, 768 N.E.2d 799, 803 (2002) ("*The inclusion of one is the exclusion of another*, a generally accepted canon of construction, construes the express inclusion of a provision in one part of a statute and its omission in a parallel section as an intentional exclusion from the latter."). Additionally, the ICAA has always specifically exempted licensed attorneys from regulation under the Act. 225 ILCS 425/2.03. This express exemption further suggests that the legislature regarded lawsuits concerning consumer debt as separate from conduct that constitutes "engag[ing] in debt collection." *Id.* § 425/2.

8

The 2013 amendments also support this construction of the Act. The amendments subject "debt buyers" to the ICAA for the first time and provide that "[a] debt buyer shall be subject to all of the terms, conditions, and requirements of this Act . . . ." *Id.* § 425/8.5. The amendments include in its definition of a "debt buyer" a company like NCO Portfolio, whose only conduct after purchasing consumer debt is to hire "an attorney-at-law for litigation in order to collect such debt." *Id.* § 425/2. The legislature's decision to regulate debt buyers like NCO Portfolio in 2013 strongly implies that it did not intend to regulate them previously. *See People v. Hicks*, 119 Ill. 2d 29, 33, 518 N.E.2d 148, 151 (1987) ("Absent substantial considerations to the contrary, an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed." (internal quotation marks omitted)); *W. Nat'l Bank of Cicero v. Vill. of Kildeer*, 19 Ill. 2d 342, 354, 167 N.E.2d 169, 175 (1960) ("The addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence.").

Daniel Kelber, senior legal counsel for the Illinois Department of Financial and Professional Regulation (IDFPR), testified during his deposition in a related case—*Caston-Palmer v. NCO Portfolio Management, Inc.*, No. 08 C 2818—that there was a "general agreement" between Kelber, Deputy General Counsel Mark Thompson, and other attorneys in the IDFPR's Division of Professional Regulation that the ICAA did not apply to "passive debt buyers" like NCO Portfolio. Defs.' Ex. B at 22. Kelber defined "passive debt buyers" as companies that "purchas[e] debt and then either hir[e] a collection agency to collect on that debt or hir[e] an attorney to file suit on their behalf to collect the debt." *Id.* at 19. Because the ICAA exempts attorneys from the licensing

9

requirement, 225 ILCS 425/2.03(5), Kelber and other attorneys at the IDFPR concluded that a company that owned debt did not "engage in collecting the same" by hiring an attorney to file a collection suit on its behalf. *Id.* § 425/2–3. Kelber has, on behalf of the IDFPR, responded to a number of inquiries by law firms and companies regarding this point, expressing the position discussed above and stating that this should be "construed as a statement reflecting the interpretation of the Department on the particular matter . . . ." Defs.' Ex. B at 31.

IDFPR is the agency responsible for investigating a collection agency's unlicensed activity, and it has the authority to issue cease and desist letters to companies that it concludes have violated the ICAA. *Id.* § 425/4.5. As such, the IDFPR's interpretation is entitled to some deference. *Hadley v. Ill. Dep't of Corr.*, 224 Ill. 2d 365, 370, 864 N.E.2d 162, 165 (2007) ("[W]here . . . an agency is charged with the administration and enforcement of the statute, courts will give deference to the agency's interpretation of any statutory ambiguities."); *Fried v. Danaher*, 46 Ill. 2d 475, 478, 263 N.E.2d 820, 822 (1970). Although the IDFPR's interpretation of the ICAA is not binding, the Court finds that it is persuasive and carries some weight.

A ruling that filing a lawsuit, without more, renders an entity a collection agency that must register with the state would greatly extend reach of the pre-2013 ICAA and, correspondingly, the power of the IDFPR. Under plaintiffs' proposed reading of the pre-2013 Act, a creditor would have had to register as a collection agency before it could file suit in Illinois on a consumer debt that it owned. The ICAA specifies that in order to obtain a certificate of registration, a company's officers must:

(a) be of good moral character and of the age of 18 years or more;

>(b) have had at least one year experience working in the credit field or a related area, or be qualified for an original license under Section 6(c) of this Act;
>
>(c) have an acceptable credit rating, have no unsatisfied judgments; and not have been officers of a former registrant under this Act whose certificates were suspended or revoked without subsequent reinstatement.

225 ILCS 425/7. Thus a debt-owning company—assuming that it did not qualify for the general exemptions set forth in section 2.03—could not set foot in state court to obtain an adjudication of its rights vis-à-vis the debtor unless and until the IDFPR had determined that the company's officers were "of good moral character" and had an "acceptable" credit rating. *Id.* The Court sees no basis to read the pre-2013 ICAA as granting such broad powers to a state agency—effectively, the power to grant or deny a company the ability to sue to collect debts that it owns—without an express statement by the legislature that it intended the ICAA to apply to such activity.

Plaintiffs argue that the Illinois Appellate Court's decision in *LVNV Funding, LLC v. Trice*, ___ Ill. App. ___, 952 N.E.2d 1232 (2011), is dispositive on the issue. In *LVNV Funding*, the court stated that an unlicensed company "committed a crime when it purchased the debt and sued to collect it." *Id.* at 1236. The court further held that "a complaint filed by an unregistered collection agency is . . . a nullity, and any judgment entered on such a complaint is void." *Id.* at 1237. Plaintiffs contend that the Court should follow the appellate court's holding in *LVNV Funding* and rule that when NCO Portfolio filed its first lawsuit in Illinois, it simultaneously became a collection agency under the ICAA and violated that Act for having filed suit without first having registered with the state.

Because jurisdiction in this suit is based on the parties' diversity of citizenship,

11

the Court's task is "to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Woidtke v. St. Clair Cnty.*, 335 F.3d 558, 562 (7th Cir. 2003); *see also Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002). The Seventh Circuit has advised that "[w]hen the state Supreme Court has not decided the issue, the rulings on the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *State Farm Mut. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). Yet if an examination of state law indicates that the intermediate appellate court's decision was reached "without consideration of a critically important datum of state law such that [the Court is] persuaded that the state supreme court would rule differently, [its] duty is not to apply the majority appellate rule mechanically but rather to follow the course the state supreme court would take." *Roberts v. W.-S. Life Ins. Co.*, 568 F. Supp. 536, 544 (N.D. Ill. 1983).

The Illinois Supreme Court has already called into question at least part of the appellate court's holding in *LVNV Funding. See Downtown Disposal Servs., Inc. v. City of Chi.*, ___ Ill. 2d ___, 979 N.E.2d 50 (2012). In *Downtown Disposal Services*, the court held that there is no automatic nullity rule, and courts in Illinois instead should analyze the particular circumstances present in each case to determine whether the lawsuit may proceed despite a technical error on the part of a party. *Id.* at 57. Plaintiffs correctly point out that the court in *Downtown Disposal Services* was not interpreting the ICAA, and its holding was focused on the effect of a violation of a legal rule, rather than whether particular conduct violated the rule at all. *Id.* Yet the fact that at least part of

12

the *LVNV Funding* court's holding has been abrogated by the Illinois Supreme Court—namely, that a company's violation of the ICAA in filing suit automatically renders the court's judgment in that suit void—counsels against giving the decision of the court in *LVNV Funding* the degree of deference that plaintiffs urge.

The appellate court in *LVNV Funding* did not have the benefit of the 2013 amendments or the IDFPR's interpretation of the statute when it decided the case. These two pieces of information provide significant evidence that legislature did not consider the institution of litigation to render an entity a collection agency subject to registration under the ICAA.

When the Court reads the ICAA in its entirety, it is persuaded that the Illinois Supreme Court would not consider a creditor's institution of litigation to be sufficient to trigger the statute's registration requirement. The ICAA declares that its purpose is to subject collection agencies to "regulation and control in the public interest." 225 ILCS 425/1a. Section 1a further states that the ICAA was enacted "to protect consumers against debt collection abuse." *Id.* Illinois courts already have ample authority to protect debtors from abusive or harassing litigation, including the courts' authority over parties in a particular lawsuit and their power to regulate attorney conduct generally. *See* Ill. Sup. Ct. R. 137 (providing sanctions for an attorney or party who signs a court document that is designed to harass another party); *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 16, 816 N.E.2d 272, 280 (2004) ("A lawyer is prohibited . . . from acting on behalf of a client in any manner that serves merely to harass or maliciously injure another."). If the Illinois legislature intended an additional safeguard regulating a party's ability to file a lawsuit to collect a consumer debt, it likely would have done so expressly.

For these reasons, the Court concludes that the pre-2013 ICAA did not consider a company that simply filed collection lawsuits on debts that it owned to be a collection agency subject to the Act's registration requirement. Summary judgment in favor of NCO Portfolio and against plaintiffs is therefore appropriate.

Plaintiffs' claims against NCO Financial rest entirely upon their contention that NCO Portfolio became a collection agency when it filed lawsuits against them in June 2006 through June 2011. They have articulated no other independent basis for recovery against NCO Financial. Because the Court has concluded that NCO Portfolio did not act as a collection agency under the ICAA during the relevant period, plaintiffs' claims against NCO Financial necessarily fail. Thus summary judgment in favor of NCO Financial is also appropriate. Plaintiffs' corresponding motion for summary judgment is denied. Because this conclusion forecloses plaintiffs' claims, the Court need not address defendants' alternative argument regarding the plaintiffs' ability to recover the relief they request under the ICAA.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [docket no. 62], and denies plaintiffs' motion for summary judgment [docket no. 53]. The parties have reported that they have settled plaintiffs' FDCPA claims, but no order disposing of those claims has yet been entered. The Court therefore sets the cases for a status hearing on April 18, 2013 at 9:30 a.m. for purpose of determining what, if anything, remains to be litigated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 15, 2013