IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 11 C 3918 |
| NCO FINANCIAL SYSTEMS, INC., | ) ) | |
| Defendant. | ) ) | |
| ROCIO GALVAN and JOSEPH HAWTHORNE, individually and on behalf of a class, and PEOPLE OF THE STATE OF ILLINOIS ex rel. ROCIO GALVAN and JOSEPH HAWTHORNE, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 11 C 4651 |
| NCO PORTFOLIO MANAGEMENT, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rocio Galvan and Joseph Hawthorne, on behalf of themselves and two certified classes, have sued NCO Portfolio Management, Inc. (NCO Portfolio) and NCO Financial Systems, Inc. (NCO Financial) under the Illinois Collection Agency Act

(ICAA).[1]  The Court assumes familiarity with the facts of the case, which can be found in this Court's prior decision granting summary judgment for defendants.  See Galvan v. NCO Fin. Sys., Inc., Nos. 11 C 3918, 11 C 4651, 2013 WL 1628190, at *1 (N.D. Ill. Apr. 15, 2013).

In brief, plaintiffs contend that NCO Portfolio violated the ICAA by attempting to collect on debts it owned and that NCO Financial violated the ICAA by attempting to collect the debts for NCO Portfolio despite knowing that NCO Portfolio had no right to collect.  The Court granted summary judgment in favor of the defendants in April 2013. See Galvan, 2013 WL 1628190, at *7.  In that opinion, the Court found that the ICAA did not require NCO Portfolio to register with the state of Illinois as a debt collection agency. Accordingly, the Court found that neither NCO Portfolio nor NCO Financial could be held liable for NCO Portfolio's failure to register prior to initiating suits against the plaintiffs to collect on outstanding debts.  Id.

Plaintiffs appealed to the Seventh Circuit Court of Appeals.  While the appeal was pending, the Illinois Supreme Court decided LVNV Funding, LLC v. Trice ("Trice 2"), 2015 IL 116129, 32 N.E.3d 553 (2015).  In Trice 2, the court decided that a passive debt buyer "clearly qualifies as a 'collection agency' as defined in section 3 of the Act." Id. ¶ 24, 32 N.E.3d at 559.  In light of the Illinois Supreme Court's holding on that point, the Seventh Circuit reversed this Court's summary judgment ruling and remanded for further proceedings.  Galvan v. NCO Portfolio Mgmt., Inc., 794 F.3d 716, 717 (7th Cir. 2015).

Both sides have again moved for summary judgment.  For the reasons stated

---

[1] Hawthorne also sued NCO Financial under the federal Fair Debt Collection Practices Act, but that claim was not part of the class certification order.  This claim was voluntarily dismissed pursuant to a settlement agreement in May 2013.

below, the Court grants defendants' motion in part.

**Discussion**

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, [the Court] review[s] cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks omitted).

*Trice 2* makes clear that section 4 of the ICAA required NCO Portfolio to be registered as a collection agency during the relevant period in order to collect on the debts it had acquired. Defendants admit that NCO Portfolio was not so registered at any time during the relevant period. Defendants also admit that NCO Portfolio initiated litigation to collect debts and that NCO Financial sought to collect these debts. Plaintiffs

contend that in light of these undisputed facts, defendants are liable as a matter of law and must pay actual damages, namely the fees associated with class members' court appearances and the money they paid to defendants to satisfy their debts.

Defendants argue that the ICAA provides no private right of action to seek damages for a violation of the statute's licensure requirement. Defendants acknowledge that the Illinois Appellate Court ruled that a private right of action exists to enforce the prohibitions on harassing debt collection practices contained in section 9 of the ICAA in *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1979), and they do not dispute that Illinois courts have favorably cited *Sherman* many times since. They contend, however, that *Sherman* is not applicable to violations of section 4 of the ICAA, especially in light of subsequent amendments to the ICAA. This is so, they say, because *Sherman* dealt with another portion of the ICAA more amenable to private enforcement than the licensure provision at issue in this case.

In *Sherman*, plaintiffs alleged that the defendant violated section 9 of the ICAA by "engag[ing] in severe harassment of plaintiffs in an attempt to collect" on an outstanding debt. *Id.* at 23, 392 N.E.2d at 156. Specifically, plaintiffs alleged that the defendant telephoned the plaintiffs' residence ten to twenty times per day, sent numerous letters, called non-owing family members at their places of business and threatened to garnish their wages, and used threatening, abusive, and profane language in its collection calls. *Id.* at 23–24, 392 N.E.2d at 156–57. The Illinois Appellate Court observed that although the plaintiffs "sufficiently alleged the commission of acts proscribed as unlawful under the Act, absent from the Act is any provision for a private right of action to recover damages for such violations." *Id.* at 29, 392 N.E.2d at 160. Defendants accordingly

4

sought dismissal of plaintiffs' complaint, arguing that the ICAA provided no private right to sue.

The court rejected the defendant's contention. It explained:

> First, that the acts of collection harassment alleged contravene the public policy of this State, as expressed in the Collection Agency Act, is beyond question. Second, it is obvious that plaintiffs are within the class of persons the statute is designed to protect. Third, it is equally obvious that the injury allegedly suffered by plaintiffs is within the range of injuries the statute was designed to prevent. Fourth, the need for a civil action for damages under the statute is clear. The act contains no provision for compensating debtors for their injuries and therefore provides little incentive for them to seek enforcement of the Act. Although an aggrieved debtor may derive some psychological satisfaction from the suspension or revocation of a collection agency's certificate, or from the criminal prosecution of an offending agency, it seems unlikely that most debtors will initiate and pursue their complaints through all the steps in the administrative or criminal justice processes in the absence of any tangible reward. Finally, nothing in the Act indicates an intent to limit the remedies available to those, administrative or criminal, enumerated in the Act. Other statutes providing for such remedies have nevertheless been held to embrace implied civil rights of action, and the Act itself manifests an intent contrary to exclusivity.

*Id.* at 30–31, 392 N.E.2d at 161. For these reasons, the court held that the ICAA implied a private right of action for damages, at least in the context of unlawful harassment prohibited under specific portions of section 9. *Id.* at 30, 392 N.E.2d at 161.

Some circuit judges in Cook County have recently questioned the continuing vitality of *Sherman*. *See, e.g.*, *Merritt v. Palisades Acquisition XVI, LLC*, No. 11 CH 14691 (Cir. Ct. Cook Cty. July 3, 2012); *Betts v. Atl. Credit & Fin., Inc.*, No. 11 CH 23341 (Cir. Ct. Cook Cty. June 18, 2012); *Rewak v. Erin Capital Mgmt., LLC*, No. 11 CH 28506 (Cir. Ct. Cook Cty. May 25, 2012); *Dremo v. Davis Acquisitions Corp.*, No. 11 CH 18522 (Cir. Ct. Cook Cty. May 25, 2012). The Illinois legislature has amended the ICAA on multiple occasions in the more than thirty years since *Sherman* was decided. For

example, in 1989, an enforcement provision was added to the statute; another was added in 1996 (both of which are discussed further below). Also in 1996, the legislature incorporated into the ICAA an administrative review provision. See 225 ILCS 425/26. Notably, Illinois courts have held that similar administrative review provisions contained in other statutes evince the legislature's intent to withhold any claim to a private right of action. See, e.g., *Metzger v. DaRosa*, 209 Ill. 2d 30, 42, 805 N.E.2d 1165, 1171 (2004). And the 2008 and 2013 amendments to the statute, as discussed in this Court's prior ruling, significantly altered the statute's application to "debt collectors," "collection agencies," and "debt buyers." 225 ILCS 425/2; see also *Galvan*, 2013 WL 1628190, at *2–3. Some circuit courts have recently declined to follow *Sherman*, concluding that, as amended, the ICAA no longer implies a private right of action.

As plaintiffs in this case point out, numerous courts in this district, including the undersigned judge, have relied upon and cited favorably to *Sherman* for its proposition that the ICAA provides a private right of action. See, e.g., *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 2254257, at *6 (N.D. Ill. June 14, 2012); *Kim v. Riscuity, Inc.*, No. 06 C 1585, 2006 WL 2192121, at *3 (N.D. Ill. July 31, 2006) (Kennelly, J.); accord *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 751–52 (N.D. Ill. 2003); *Trull v. GC Serv. Ltd. P'ship*, 961 F. Supp. 1199, 1206–07 (N.D. Ill. 1997). Moreover, as another judge in this district observed a few years ago:

> Because the Supreme Court of Illinois has not directly addressed whether a private right of action lies under § 9 or any other provision of the ICAA, [a federal court] may deviate from *Sherman* only if there are persuasive indications that the [state supreme court] would decide the [issue] differently. There are no such persuasive indications; to the contrary, the state supreme court . . . has favorably cited *Sherman*'s private right of action analysis.

*Grant–Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 940 (N.D. Ill. 2012) (internal citations omitted) (citing *Sawyer Realty Grp., Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 388–89, 432 N.E.2d 849, 852–53 (1982)); see also *McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 800 (N.D. Ill. 2013) (same).

Defendants contend that in *Trice 2*, the Illinois Supreme Court gave an indication that it would depart from *Sherman* if given the opportunity. In *Trice 2*, a debtor sought to attack a judgment entered against him in a debt collection action prosecuted by an attorney representing an unregistered passive debt buyer. Illinois law permits a party to collaterally challenge a final judgment only by filing a section 2–1401 petition. 735 ILCS 5/2–1401. When a party files a section 2–1401 petition, it typically must demonstrate that it had a defense or claim that would have precluded entry of judgment in the original action. *Trice 2*, 2015 IL 116129 ¶ 11, 32 N.E.3d at 557. The party must also establish that it acted with "diligence in both discovering the defense or claim and presenting the petition." *People v. Vincent*, 226 Ill. 2d 1, 8, 871 N.E.2d 17, 22 (2007). When a petitioner contends that the challenged judgment is void, however, it need not allege that it possessed a meritorious defense and was diligent in discovering and pursuing the defense. 735 ILCS 5/1401(f); see *Sarkissian v. Chicago Bd. of Educ.*, 201 Ill. 2d 95, 104, 776 N.E.2d 195, 201–02 (2002). The debtor in *Trice 2* took the latter approach: rather than alleging that he had a defense and was diligent in discovering it, he claimed his collateral challenge was permissible because the debt collector's failure to register rendered the judgment entered against him void.

The Illinois Supreme Court held that the passive debt buyer was a "collection agency" under the ICAA and was therefore required to register before it could pursue

7

collection activity against the debtor. But the court nevertheless upheld judgment in favor of the unregistered collection agency. It did so because the collector's failure to register did not render the judgment in its prior collection action "void," but rather made it "voidable." As the court explained:

> To be sure, LVNV's failure to register as a debt collection agency was error. And that error, if raised in a timely fashion, might have warranted dismissal of LVNV's lawsuit by the circuit court, merited reversal on direct appeal, or justified setting aside the final judgment under section 2–1401 if the requirements of that provision, such as due diligence, were established. But any error in failing to register did not deprive the circuit court of jurisdiction. Therefore, the circuit court's judgment is not void.

*Trice 2*, 2015 IL 116129 ¶ 40, 32 N.E.3d at 563. Put differently, the court said that the debtors could have raised as an affirmative defense the collectors' failure to register but that their failure to register did not destroy the circuit courts' jurisdiction to hear the collection actions the unregistered collectors brought. The debtor had not raised this affirmative defense; instead, he collaterally attacked the final judgment entered against him. This, said the court, he could not do.

Defendants argue that *Trice 2* establishes that the Illinois Supreme Court would depart from *Sherman* if given the opportunity, for it shows that the court does not believe that private suits for damages or disgorgement are the proper enforcement mechanisms for ICAA violations, or at least for violations of the ICAA's licensure provision. Plaintiffs contend that *Trice 2* shows no such thing. Rather, they say, it indicates only that the ICAA does not provide a separate way to collaterally attack final judgments. The court in *Trice 2* endorsed a debtor's right to invoke the licensure requirement to defend against a collection action and clarified how a debtor could use a section 2–1401 petition to collaterally attack a judgment entered in favor of an

8

unregistered debt collector. But, plaintiffs say, the court was silent about the propriety of filing suit against an unregistered debt collector rather than collaterally challenging a final judgment.

For present purposes, the Court is willing to assume that *Sherman* remains good law and that *Trice 2* does not clearly evince the Illinois Supreme Court's interest in overturning it. But neither *Sherman* nor any other case directly holds that the ICAA provides a private right of action for debtors to seek monetary damages for violations of the ICAA's licensure provision. Accordingly, as the Illinois Appellate Court did in *Sherman*, this Court must look to the text of the ICAA to determine whether to find an implied private right of action for this sort of violation of the statute. In Illinois, "the lack of specific language granting such a right . . . is not necessarily dispositive because a court may determine that a private right of action is implied in a statute." *Metzger*, 209 Ill. 2d at 35, 805 N.E.2d at 1168. An implied private right of action exists under a statute where:

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1117–18 (1999).

Plaintiffs first contend that section 4 implies a private right of action for damages because section 9 (the provision *Sherman* held to permit private enforcement) contains a broad general provision that prohibits violating the ICAA or rules promulgated thereunder. *See* 225 ILCS 425/9(a)(2). Section 4 of the ICAA prohibits a collection

9

agency from operating in the state or taking direct or indirect action to collect on a debt without first obtaining a license in accordance with the requirements of sections 5 and 7. *Id.* § 4. According to plaintiffs, the general prohibition on violating the ICAA contained in section 9 implies a private right of action to enforce section 4's licensure requirement.

Like *Sherman*, this case concerns a statutory provision designed to protect Illinois citizens who owe debts, and the state has a clearly established public policy interest in providing this protection:

> The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois.

*Id.* § 1a. The other factors courts are instructed to consider when deciding whether a statute implies a right of action, however, do not weigh in favor of finding an implied right of action for a violation of section 4 of the ICAA. For one thing, the injuries alleged in *Sherman*—namely, personal and reputational injuries resulting from harassing collection practices—were the types of injuries that the violated provisions of section 9 were designed to protect. By contrast, section 4, which imposes a licensure requirement, appears to be more concerned with protecting the state's ability to regulate collection agencies.

More important is the fact that a private right of action for damages for a violation of section 4 is neither consistent with the language of the ICAA nor necessary to prevent or address violations of the statute. As suggested earlier, two provisions added to the ICAA after *Sherman* are significant in this analysis. In 1989, the Illinois legislature

amended the ICAA to add a provision specifically designed to address enforcement of section 4's licensure provision. Section 14a of the ICAA, first effective in September 1989, provides:

> The practice as a collection agency by any person not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Secretary, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. . . . If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice.

*Id.* § 14a. In 1996, the legislature added another specific provision detailing enforcement mechanisms and civil penalties that can be imposed when a person violates the ICAA's licensure provision. Section 4.5, first effective in June 1996, provides for imposition of a civil penalty "after a hearing is held in accordance with the provisions set forth in this Act regarding the provision of a hearing for the discipline of a licensee." *Id.* § 4.5(a). It grants the Department of Professional and Financial Regulation "the authority and power to investigate any and all unlicensed activity," and permits the Department to both "issue a rule to show cause why an order to cease and desist should not be entered against that person" and "tak[e] any other action provided under this Act." *Id.* § 4.5(b). These amendments to the ICAA, together with the amendment incorporating the Administrative Review Law, might be sufficient to demonstrate that the Illinois Supreme Court would not consider *Sherman* authoritative in assessing whether there should be a private right of action for violation of section 4 of the ICAA. But even if not, these provisions seriously undermine plaintiffs' argument that implying a right of action is not only "consistent with the underlying purpose of the

11

statute" but also "necessary to provide an adequate remedy for violations of the statute."  *Fisher*, 188 Ill. 2d at 460, 722 N.E.2d at 1117–18.

In attempting to ascertain the intent of the legislature, Illinois courts adhere to two principles of statutory construction that are relevant to this case.  The first is that "where there exists a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied."  *Howard v. Weitekamp*, 2015 IL App (4th) 150037 ¶ 17, 2015 WL 8484123, *3 (2015) (internal quotation marks omitted) (quoting *People v. Villarreal*, 152 Ill. 2d 368, 379, 604 N.E.2d 923, 928 (1992)).  The second is the oft-cited maxim *expressio unius est exclusio alterius*, which "means that the inclusion of one thing implies the exclusion of another; in other words, 'where a statute lists the thing or things to which it refers, the inference is that all omissions are exclusions, even in the absence of limiting language.'"  *City of St. Charles v. Ill. Labor Relations Bd.*, 395 Ill. App. 507, 509–10, 916 N.E.2d 881, 884 (2009) (quoting *McHenry Cty. Defs., Inc. v. City of Harvard*, 384 Ill. App. 3d 265, 282, 891 N.E.2d 1017, 1032 (2008)).

The ICAA generally prohibits violations of its rules and requirements.  It does not enumerate specific methods of enforcement for violations of every action it prohibits, but it does provide details regarding both how the licensure provision will be policed and what remedies will be available against persons who attempt to collect debts without a valid license.  A broad reading of section 9's general prohibition would conflict with the legislature's choice to provide these specific measures.  Moreover, the statute expressly permits an individual to sue for injunctive relief, but it includes no right for an individual to sue for monetary relief.  In sum, the ICAA sets apart section 4's licensure requirement

and comprehensively prescribes the tools that can be used to address violations, and it omits the remedy of a private suit for damages. For all of these reasons, the Court finds that the ICAA does not imply a private right of action for debtors to sue for damages when a collection agency violates section 4.

In finding that the ICAA does not imply a private right of action to enforce its licensure provision, this Court need not disavow its prior decision in *Kim*. There, the Court relied on *Sherman* in determining that the ICAA implied a private right of action for a plaintiff against a collection agency that was enforcing contracts it knew or should have known were invalid, in violation of section 9 of the ICAA. *Kim*, 2006 WL 2192121, at *3. The plaintiff in *Kim* alleged that his credit score was damaged when a debt collector attempted to enforce an invalid contract—precisely the type of injury that section 9 is designed to protect against. *Id.*; 225 ILCS 425/9(a)(17). Like the plaintiff in *Sherman*, the plaintiff in *Kim* sought to protect himself from abusive practices enumerated as unlawful in section 9. No additional statutory language appeared to limit the remedies available for such violations, and no relevant additional enforcement language like that found in sections 4.5 and 14a existed elsewhere in the ICAA.

Plaintiffs' alternative argument is that it is invoking the same right of action the court found in *Sherman* for harassing debt collection practices. Its argument is that because NCO Portfolio was unlicensed, it had no right to collect the debts it owned. Accordingly, they say, this meant the amount the plaintiffs owed defendants was zero dollars. Plaintiffs therefore argue that the same private right of action the court found in *Sherman* exists here because the defendants (1) attempted to enforce a right or remedy they knew did not exist, *id.* § 9(a)(24); (2) misrepresented the amounts owed, *id.*

13

§ 9(a)(30); and (3) attempted to collect charges or fees in excess of the actual debts owed, *id.* § 9(a)(33).

These "claims," however, are actually just different ways to assert a violation of section 4 of the ICAA. Plaintiffs' attempt to shoehorn their claims into section 9 is unavailing. The portions of section 9 that plaintiffs cite address personal, financial, and reputational injuries that occur when a collection agency collects or attempts to collect money that is not actually owed. If a collection agency attempts to collect a debt arising out of a contract the agency knows is invalid, *Sherman* suggests that the ICAA implies a private right of action. But, importantly, the statute's concern with this type of violation is fully set forth in section 9; there is nothing outside of section 9 that provides other enforcement mechanisms for this type of activity. Where the collection agency's alleged ICAA violations arise from the agency's failure to obtain a license, however, sections 14a and 4.5 provide detailed, specific language establishing the remedies available to debtors and the state. To the extent the ICAA continues to imply a private right of action for a violation of section 9, it does not do so for claims arising from a collection agency's failure to obtain a license. The Court therefore grants summary judgment in defendants' favor on plaintiffs' claims for damages.

Finally, plaintiffs seek "an injunction prohibiting NCO Portfolio's further operation in Illinois until it obtains the proper license." Pls.' Reply, dkt. no. 73, at 19. As indicated earlier, section 14a of the ICAA expressly permits any person to seek an injunction against collection agencies that do not have a valid license. *See* 225 ILCS 425/14a. Defendants' motion for summary judgment does not address the claim for injunctive relief. Thus that claim survives.

**Conclusion**

For the foregoing reasons, the Court grants defendants' renewed motion for summary judgment [dkt. no. 57] in part and denies plaintiffs' renewed motion for summary judgment [dkt. no. 64]. Summary judgment is granted in defendants' favor on plaintiffs' claim for damages under the ICAA. Plaintiffs' claim for injunctive relief remains pending. The case is set for a status hearing on March 8, 2016 at 9:30 a.m. to set a schedule for further proceedings.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 1, 2016